## PAUL v. HARRIS
(No. 1541; April 9, 1929; 276 Pac. 444)

For the plaintiff in error there was a brief by *Wm. C. Snow* of Basin, Wyo., and *Harold H. Paul* of counsel, of Milwaukee, Wis., and an oral argument by *Mr. Snow*.

For the defendant in error, there was a brief by *L. S. Strahan* of Lovell, Wyoming.

RINER, Justice.

This cause is before us upon proceedings in error instituted to review a judgment of the District Court of Big Horn County denying plaintiff in error Paul specific performance of a written contract between him and defendant in error Harris. The parties will be hereinafter referred to as plaintiff and defendant or by their respective names.

Summarized, Paul's petition is to the following effect: After reciting the residence of the parties and that one William G. Kocherhans was the owner in fee of a described eighty acres of land in Big Horn County, Wyoming, it is alleged that he and his wife, on December 29, 1920, gave plaintiff a note with a mortgage on said land as security therefor—the note being for $600, bearing six per cent annual interest from January 1, 1921 and falling due five years after that date; that this mortgage was recorded January 12, 1921, with the register of deeds of Big Horn county; that upon Kocherhan's failure to pay the interest due on the note January 1, 1925, plaintiff foreclosed said mortgage by advertisement, the property being sold to him on October 20, 1925, for the sum of $690; and this amount was applied upon the mortgage debt, accrued costs and fees, which were then in excess of that sum; that the sheriff's certificate of sale under the mortgage was recorded with the register of deeds of Big Horn county on November 9, 1925, and that on October 2, 1926, a sheriff's deed to the property sold issued to plaintiff, conveying to him all the interest and rights of Kocherhans herein, said deed being re-

corded with the register aforesaid October 16, 1926; that the defendant having or claiming some interest in the real estate so sold, subordinate to that of plaintiff and which defendant desired to protect, plaintiff and defendant, after the foreclosure sale had occurred, enter into a written contract by which defendant agreed to purchase all the right, title and interest which plaintiff would obtain to said real estate; that defendant failed and refused, contrary to the terms of this contract, to pay the taxes upon the premises and that plaintiff was obliged to pay the county treasurer of Big Horn county $122.80 to protect his interest as against said taxes; that defendant has failed, neglected and still refuses to comply with the terms of said contract. Copies of the note, mortgage, sheriff's certificate of sale under foreclosure of mortgage, notice of mortgage foreclosure, affidavit of publication thereof, sheriff's deed to plaintiff pursuant to these foreclosure proceedings, and the written agreement between plaintiff and defendant sued upon all attached to and made a part of the petition. The prayer of the pleading is in detail for the specific performance of the contract between the parties.

For answer, the defendant denied generally the allegations of the petition not in the answer thereafter admitted; the pleading then admits that defendant executed ''an agreement of similar content and purport to the one set forth'' in the petition, but alleges that this was with the understanding that the transfer to defendant of plaintiff's interest would give defendant clear title to the land in question, free of all claims except taxes. The answer also alleged that plaintiff was not the owner of the title to the lands free from other claims, but that Aldrich & Buchanan, Inc., through execution and sale thereunder, had obtained a sheriff's deed to said lands and that plaintiff was informed that defendant was ready to complete his part of the agreement whenever plaintiff would clear the title as to this sheriff's deed, but that plaintiff failed and refused to put the title in such condition that defendant by

carrying out the terms of his agreement could obtain a clear title free from the claims of third parties; that for this reason only, defendant did not carry out the terms of his agreement. It was prayed simply that the petition be dismissed and defendant be awarded his costs.

The defendant also filed a cross petition, wherein it was alleged in substance that on November 16, 1925, plaintiff and defendant entered into an agreement under whose terms defendant was to purchase and plaintiff was to sell a clear marketable title to the land in question; that defendant was induced to enter into the agreement by reason of the supposed oil deposits in said land, the venture being speculative on defendant's part; that plaintiff failed and refused to transfer said lands to defendant free and clear of all claims other than those mentioned in said agreement, though defendant often demanded such transfer and called plaintiff's attention to the fact that a third party had a sheriff's deed to these lands; that defendant could have sold these lands for $4,000, but on account of plaintiff's failure to carry out the agreement aforesaid, the sale could not be made, and that defendant has been damaged $3,300. Judgment for that amount was prayed.

Plaintiff filed an answer to the cross petition and a reply to the answer of defendant, each in form a general denial. He also interposed a general demurrer to each of defendant's pleadings.

The cause was tried to the court and a judgment was entered by it denying either party any relief. Thereafter a motion for a new trial was made by plaintiff, was overruled by the court and an exception was saved to this ruling.

The material facts of the case are very little in dispute and are these: December 29, 1920, William G. Kocherhans and wife gave the plaintiff a promissory note and mortgage upon the land in question, which appears to have been then owned by Kocherhans. The note had the terms as abstracted above from plaintiff's petition and the mortgage was duly recorded as plaintiff alleged in his pleading.

March 17, 1923, Aldrich & Buchanan, Inc., a corporation, obtained a judgment against the mortgagor Kocherhans for $278.10 and costs. December 18, 1924, the defendant, acting on behalf of himself and others; having advanced money to Kocherhans for the purpose of redeeming the land aforesaid from another pending sheriff's sale, entered into a written contract with Kocherhans by which he agreed, upon the consideration of such advancements, to convey said premises to the defendant as trustee, free of all claims except the plaintiff's mortgage for $600, taxes and a certain described oil and gas lease.

On April 9, 1925, an execution was issued on the Aldrich & Buchanan, Inc., judgment and levied upon the lands covered by plaintiff's mortgage, and such proceedings were had that the lands were sold and a sheriff's certificate of sale thereto was issued to Aldrich & Buchanan, Inc., the same being duly recorded in the office of the county clerk of Big Horn county on June 5, 1925. September 3, 1925, foreclosure proceedings by advertisement having been instituted by plaintiff, on account of Kocherhans failure to obey the terms of the mortgage, on October 20, 1925, the property involved was sold to plaintiff for $690.

Thereafter and on November 16, 1925, plaintiff and defendant entered into the written agreement, the specific performance of which is here sought. It contained recitals to the effect that Paul was the owner of a certain mortgage which was a first lien upon the land above mentioned; that the mortgage had been foreclosed and the property bid in by him on October 20, 1925, the date of the sale which took place in accordance with the statutes of this state; that Harris desired to purchase the real estate covered by the mortgage and obtain good title thereto, and Paul being "willing to convey all his right, title and interest in and to said real estate" upon payment to him of the amount due upon the mortgage plus foreclosure costs, said amount being fixed at $740; and that the time for redemption of said

property would be up on April 20, 1926, at which time Paul would obtain sheriff's deed completing the foreclosure proceedings.

The contract then provided in substance that Harris agreed "to purchase all the right, title and interest in and to said real estate so owned" by Paul, and pay therefor $740, with ten per cent interest per annum from October 20, 1925 to date of payment, and also to pay all legally assessed taxes before January 1, 1926; that Harris also agreed to pay on or before April 20, 1926, all sums due under the agreement in excess of $600, privilege being given Harris to pay more if he so desired; that Paul agreed to convey on April 20, 1926, all his right, title and interest in said property to Harris and take back a purchase-money mortgage for whatever balance might be due under the contract, said balance not to exceed, however, $600; that in the event Harris was able to pay the whole sum of $740 with interest, then no mortgage was to be given back, but Paul's interest was to be conveyed absolutely to Harris. No other terms than the amount of the proposed mortgage back were specified. The contract further provided that it was made "subject to the right to redeem on the part of the owners of the equity of redemption or their assigns in accordance with" law, and in the event the property was so redeemed, any moneys paid by Harris to Paul should be repaid him with interest at ten per cent per annum from date of payment.

November 24, 1925, sheriff's deed to the property issued to Alrich & Buchanan, Inc., pursuant to the certificate of sale given them as above recited. This deed was recorded in the office of the county clerk of Big Horn county the same day. The 2nd day of October, 1926, sheriff's deed issued to plaintiff, pursuant to the certificate of sale given the latter under the mortgage foreclosure proceedings, the instrument being recorded October 16, 1926, with the register of deeds of Big Horn county.

Harris testified on cross examination at the trial that neither he nor Paul, at the time they made their contract, knew of the subsequent judgment of Aldrich & Buchanan, Inc., against Kocherhans, or the sale of the property upon execution issued pursuant thereto; that he never saw an abstract of the property and never had any search made of the records to find out whether there were any liens against it. He further testified:

"Q. You say you were unable to fulfill your contract with Mr. Paul? A. Yes, I say that because I thought it was unwise for me to pay all the taxes and so forth and let them (meaning Aldrich & Buchanan, Inc.) redeem the land. Q. Well, they didn't did they? A. No, they didn't. Q. The nine months expired in July? A. I don't remember when that was, but the drillers had quit and gone, they held them right there and financed them at the store until they got discouraged and quit the field. Q. After the nine months to redeem had expired you could have fulfilled your contract with Paul, couldn't you? A. I wouldn't give Paul fifteen cents for it today, he is welcome to my twelve hundred. If I had had any show to get my money out of it that would have been all right, but the drillers said they had friends in the East and they would sell three or four thousand dollars worth of royalties in it and clean up everything and we would be setting pretty, but they held me down until no body would have it."

It is assigned as error and argued by counsel that the judgment against plaintiff is contrary to the evidence and also that it is contrary to law.

For the defendant it is said that the note and mortgage were not properly introduced in evidence and not properly before the court. A sufficient answer to this is, that they were admitted in evidence by the court over defendant's objections and, as held in Johnson v. Golden, Treasurer, 6 Wyo. 537, 48 Pac. 196:

"The general rule is that an appellee can reap no advantage from adverse rulings unless he properly presents them on appeal by properly assigning them as the law and rules of the court direct."

To the same effect are the cases of Wolbol v. Steinhoff, 25 Wyo. 227, 256, 168 Pac. 251, 170 Pac. 381; Hall Oil Co. v. Barquin, 33 Wyo. 92, 163, 237 Pac. 255. Defendant has not followed the prescribed practice here.

It is urged also for the defendant that there was no evidence that plaintiff was the owner of the Kocherhans' note or mortgage or that anything was due thereon. But the recitals of the written agreement of November 16, 1925, which defendant signed and which was admitted in evidence without objection on the part of the defendant, furnished some proof of these matters, as did also the sheriff's certificate of sale under the mortgage, likewise received in evidence without objection. There was no attempt made by the defendant to show the facts to be to the contrary.

The main contention of the defendant apears to be, that there was a bilaterial mistake of fact in respect of the subject matter of the contract which induced the agreement. We do not think that the record before us discloses any such situation. Plaintiff agreed to sell defendant, and the latter agreed to buy, "all of the rights, title and interest" of Paul in the property in question. That interest, at that time, was a first mortgage upon the land—and not a scintilla of evidence in the case questions its validity as such—properly foreclosed and upon which the period for the exercise of the right of redemption was running. One of two events was bound to happen: Either the right to redeem would be exercised by the parties entitled to do so, in which case any money paid by the defendant to Paul would be returned to him with interest and the matter ended, or there would be no redemption and the sheriff's deed subsequently to be issued would inevitably pass clear title to Paul and so to Harris, all subordinate liens and claims being cut off.

It is argued that as Aldrich & Buchanan, Inc., judgment lien holders subordinate to the mortgage, had obtained a sheriff's deed to the property, and as Harris had taken over Kocherhans' interest in the land, Harris could not carry out his contract with Paul without the lien of the first mortgage being merged with such interest and the rights thereunder lost to him. But in this counsel is mistaken.

In Bolln v. LePrele etc. Co., 27 Wyo. 335, 196 Pac. 748, this court has said:

"It is well established law that, where there are two mortgages upon an estate, and the first mortgagee takes a conveyance of the equity of redemption, his first mortgage will not necessarily be merged, but he may keep it alive against the second mortgage. This rule against merger is invoked when the justice of the case requires it, and to carry out the intention of the parties, which intention may have been either expressed by their action, or may be presumed from a consideration of their interests. Its object is to protect the purchaser of the equity of redemption from a junior lien which he is not obligated to pay."

19 R. C. L., p. 489, Sec. 282, states the rule to be:

"Unless an intention to merge with knowledge of a junior lien or liens clearly appears, no merger results from the acquirement by the holder of the senior mortgage of the interests of the mortgagor, and the senior mortgage retains its priority as against all junior or intervening liens upon the mortgaged property; and this is true whether the interest of the mortgagor is the legal title to the land or the mere equity of redemption. It is only when the fee and the lien center in the same person, without any intervening, claims, liens, or equities, that a merger of the title and the lien will take place."

In the note to 39 L. R. A. (N. S.) 834, where the point is quite fully briefed with supporting citations from some nearly thirty jurisdictions, after referring to the general rule that a lesser estate in land will merge in the greater

whenever the two estates are owned by the same person, it is remarked:

"This rule, however, does not apply where such merger would be inimical to the interests of the owner, hence, unless an intention to merge with knowledge of a junior lien or liens clearly appears, no merger results from the acquirement by the holder of the senior mortgage of the interests of the mortgagor, and the senior mortgage retains its priority as against all junior or intervening liens upon the mortgaged property; and this is true whether the interest of the mortgagor is the legal title to the land or the mere equity of redemption."

See also Factors etc. Co. v. Murphy, 111 U. S. 738, 28 L. Ed. 582, 4 Sup. Ct. Rep. 679.

Neither plaintiff nor defendant were concerned, so far as rights under the first mortgage were affected, with subsequent liens or claims upon the property in question. Hence knowledge on their part of such claims was quite immaterial and could not affect the inducement to, or subject matter of the contract.

Again the record here shows that at the time they signed their agreement and for months prior thereto, the certificate of sale relating to this property, in favor of Aldrich & Buchanan, Inc., was of record in the office of the county clerk of Big Horn county. Section 4609, W. C. S. 1920, provides:

"Each and every deed, mortgage, instrument or conveyance touching any interest in lands, made and recorded, according to the provisions of law, shall be notice to and take precedence of any subsequent purchaser or purchasers of such land from the time of the delivery of any such instrument at the office of the register of deeds of the county in which the lands described in such instrument are situate, for record."

Many years ago this court, in Grieve v. Grieve, 15 Wyo. 358, 89 Pac. 569, 9 L. R. A. (N. S.) 1211, 11 Ann. Cas.

1162—an action for the reformation of a written contract on account of an alleged mistake — used this language:

"Courts of equity will reform written contracts upon the ground of mistake, but not in all cases. When parties have reduced their contracts to writing the writing is presumed to contain the final agreement arrived at between them and to express their real intent. And when a mistake in the writing is claimed by a party, the burden rests upon him to establish by evidence that is clear, satisfactory and convincing that the contract as written does not contain the agreement actually entered into by the parties; that there is a mistake in it as to a material fact; that the mistake is mutual; and that it did not occur by, or result from, the negligence of the party claiming it. Judge Storey states the rule as follows: 'It is not, however, sufficient in all cases, to give the party relief, that the fact is material; but it must be such as he could not by reasonable diligence get knowledge of, when he was put upon inquiry. For if by such reasonable diligence he could have obtained knowledge of the fact, equity will not relieve him; since that would be to encourage culpable negligence.' (1 Storey's Eq. Jur., Sec. 146.)"

When it is recalled that the defendant stated in his testimony that he never examined an abstract of title to the property in question and never had a search made of the records of Big Horn county to ascertain the true conditions of affairs concerning the title to this property before he entered into the contract under consideration, we find it hard to see how the defendant has brought himself within the terms of the rule as announced in the Grieve case, and we say this leaving out of view entirely the other phases of this cause mentioned herein.

Finally, it is perfectly clear from defendant's own testimony on cross-examination hereinabove quoted by question and answer from the transcript, that Aldrich & Buchanan, Inc., did not redeem from plaintiff's first mortgage sale, and that at the time of the trial, and for months

previous thereto, any interest in the land which Aldrich & Buchanan, Inc., claimed had been cut off and extinguished. Defendant's answer stated he advised plaintiff that he was ''ready and willing to complete his part of the agreement whenever plaintiff would clear or cause to be cleared the cloud from such title caused by the said sheriff's deed''—referring to that held by Aldrich & Buchanan, Inc. We can see no good reason why he should not do so now. It is quite clear, too, from the defendant's statements on the witness stand just adverted to, and his answer on file in the case, that the real reason he declined to carry out the terms of the contract is that he dealt with the plaintiff at a time when the defendant and others evidently thought the property possessed high speculative value, and events subsequently proved him to be mistaken in the surmise. We are not aware that courts are permitted to relieve parties from their contracts because of this sort of a mistake. We have examined with care each case and authority to which our attention has been directed by the brief of defendant, but they deal with situations other than that now before us.

Our conclusion is, therefore, that the judgment should be reversed, with instructions to the District Court of Big Horn county to enter a judgment in favor of plaintiff against the defendant for the sum of $740 with interest thereon from the 21st day of July, 1926, and also for the additional sum of $122.80 paid for taxes, together with interest thereon from the 13th day of February, 1926, as prayed in plaintiff's petition, upon plaintiff's executing and leaving with the clerk of said court, for delivery to the defendant, a proper conveyance from the former to the latter of all the plaintiff's right, title and

interest in and to the property aforesaid, as specified by the terms of the contract between the parties.

*Reversed with Instructions.*

BLUME, C. J., and KIMBALL, J., concur.