The TITLE GUARANTY COMPANY OF WYOMING, INC., Plaintiff,

v.

INTERNAL REVENUE SERVICE, UNITED STATES DEPARTMENT OF TREASURY, Defendant and Third-Party Plaintiff,

v.

Ronald C. SCHUTT, Sr., Janet A. Schutt, and Wyoming Community Development Authority, Third-Party Defendants.

No. C85–504–K.

United States District Court,
D. Wyoming.

June 3, 1987.

John C. Patton, Cheyenne, Wyo., for plaintiff.

Mark G. Fraase, Tax Div., U.S. Dept. of Justice, Washington, D.C., and Toshiro Suyematsu, Asst. U.S. Atty. for Dist. of Wyoming, Cheyenne, Wyo., for defendant and third-party plaintiff.

## ORDER RULING ON MOTIONS FOR SUMMARY JUDGMENT

KERR, District Judge.

The above-entitled matter having come on regularly for hearing before the Court on the motions of Title Guaranty Company of Wyoming, Inc. (Title Guaranty) and the United States Internal Revenue Service, Department of Treasury (Government); plaintiff Title Guaranty appearing by and through its attorney, John C. Patton, and defendant and third-party plaintiff United States appearing by and through its attorneys, Toshiro Suyematsu, Assistant United States Attorney for the District of Wyoming, and Mark G. Fraase, Tax Division, Department of Justice; and the third-party defendants appearing neither in person nor by counsel; and the Court having heard the arguments of counsel and having carefully reviewed and considered said motions, briefs, exhibits, and all matters pertinent thereto, and being fully advised in the premises, FINDS:

This action was first filed by plaintiff Title Guaranty in State District Court for the First Judicial District, Laramie County, Wyoming, on November 13, 1985 and was subsequently removed to the United States District Court, District of Wyoming, by the defendant United States Internal Revenue Service. The Government thereafter filed a counterclaim against Title Guaranty and a third-party complaint against Ronald Schutt, Janet Schutt, and the Wyoming Community Development Authority (WCDA).

The material facts are undisputed. On November 26, 1982, Lee Ann and Jonathan J. Bowman executed a warranty deed to Ronald C. Schutt, Sr. and Janet A. Schutt conveying that real property which is the subject of this action and which is more particularly described as:

That part of the SW¼NE¼ Section 31, Township 27 north, Range 68 West of the 6th P.M., Platte County, Wyoming, more particularly described as follows: Commencing at the C¼ Corner of Section 31, Township 27 North, Range 68 West, which point is marked by a ½″ × 2′ rebar with Alum. Cap No. 550, thence along the south boundary of said SW¼NE¼ Section 31 N89°44′15″E 200 feet to the POINT OF BEGINNING, with said south boundary as base bearing with all other bearings relative thereto; thence from this POINT OF BEGINNING continuing along said south boundary N89°44′15″E 397.81 feet; thence North 547.5 feet; thence S89°44′15″W 397.81 feet; thence South 547.5 feet to the point of Beginning, containing 5.00 acres more or less.

This deed was recorded in Platte County on November 30, 1982.

On January 11, 1983, Ronald and Janet Schutt executed an assumption agreement to the First Wyoming Bank, N.A.—Cheyenne, whereby the Schutts agreed to assume the Bowman's unpaid mortgage balance of $49,655.14 and agreed to make all monthly payments thereon. The mortgage and promissory note were later assigned by First Wyoming Bank to the WCDA.

The Schutts eventually defaulted on their assumption agreement and were sent a notice of intent to foreclose the mortgage on July 16, 1984. The foreclosure sale notice was also published in accordance with Wyoming statutes and the sale was held July 23, 1984. WCDA purchased the property at the sale by bidding the amount of the remaining mortgage debt on the property. A Sheriff's Certificate Of Purchase At Foreclosure Sale was issued to the WCDA at the sale and a Sheriff's Deed was issued to WCDA on December 26, 1984.

A "Notice of Federal Tax Lien Under Internal Revenue Laws" had been filed with the County Clerk for Platte County on August 9, 1983. This lien notice represented tax assessments made against the Schutts for the year ending December 31, 1978 of $4,938.25 and for the year ending December 31, 1979 in the amount of $6,102.95. The lien notice lists the date of assessments as 6–04–79 and 4–14–80 and lists the last day for refiling respectively as 7–04–85 and 05–14–86. (The Government now disputes those assessment dates, and this will be discussed later herein). However, WCDA failed to send proper notice to the United States of its intent to foreclose

its lien as required under 26 U.S.C. § 7425(b).

Under that provision, a sale of property on which the United States claims a lien is subject to the lien of the United States if that lien was filed more than thirty days before the sale and if the United States has not been given notice of such sale as prescribed in subsection (c)(1). There is no dispute that the Government's tax lien against the Schutts was filed more than thirty days before the foreclosure sale and that WCDA failed to notify the United States of the foreclosure sale.

In its motion for summary judgment, plaintiff as the provider of title insurance to the mortgagee, WCDA, claims that the Government's failure to refile its tax liens within the requisite time period makes such notices ineffective as to the WCDA pursuant to 26 U.S.C. § 6323. Plaintiff also claims that under Wyoming law, WCDA's lien has not merged with the title to the property so that the Government's lien is not raised to first priority and that the WCDA may reforeclose on its first mortgage by giving proper notice to the United States.

The Internal Revenue Service contends that when WCDA purchased property at the nonjudicial foreclosure sale, of which the United States had not been notified, WCDA took the property subject to the federal tax lien and that the mortgage indebtedness and lien were extinguished by the doctrine of merger, thereby elevating the federal tax lien from its junior status. The Government also contends that refiling was unnecessary since it argues that the tax assessments were actually made on July 12, 1980 and August 30, 1982 and that the tax lien notice is in error as to the assessment dates.

## REFILING REQUIREMENT

Title 26 U.S.C. § 6322 provides that:

Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed ... is satis-

fied or becomes *unenforceable by reason of lapse of time.*

(Emphasis added).

Section 6321 of Title 26 creates a lien in favor of the United States government upon all property, real or personal, belonging to a person who is liable to pay a tax and either neglects or refuses to do so.

Such a lien, however, is not valid against any "purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor" until notice thereof has been properly filed. 26 U.S.C. § 6323(a). The filing procedure is set forth in 26 U.S.C. § 6323(f) and 26 U.S.C. § 6323(g)(1) and specifically provides that:

Unless notice of lien is refiled in the manner prescribed in paragraph (2) during the required refiling period, such notice of lien shall be treated as filed on the date on which it is filed (in accordance with subsection (f)) after the expiration of such refiling period.

The term "required refiling period" is defined in 26 U.S.C. § 6323(g)(3) as meaning:

(A) the one year period ending 30 days after the expiration of 6 years after the date of the assessment of the tax, and

(B) the one-year period ending with the expiration of 6 years after the close of the preceding required refiling period for such notice of lien.

■   While failure to refile the lien does not necessarily affect the validity of the lien, but affects rather the priority of the lien, *United States v. Stonehill,* 702 F.2d 1288, 1300 (9th Cir.1983), such liens are not virtually extended and may expire as the result of the running of the statute of limitations. S.Rep. No. 1708, 89th Cong., 2d Sess. (Sen.Fin.Comm.), Reprinted in 1966 U.S. Code Cong. & Admin.News 3722, 3733. "Generally the Federal Government has 6 years from the date of assessment to take action to collect the tax." *Id.* The legislative history further indicates that a creditor may well assume that if assessment occurred more than six years prior to the record search, then the tax lien is no

longer enforceable. *Id.* The refiling is required

> every 6 years after the first required refiling where the lien continues for the lien to retain its priority. The failure to refile the tax lien at the appropriate time is not to affect the validity of the lien itself. However, it *nullifies the effect of the prior filing of the notice of the tax lien* . . . . [A]ny late refiling of a tax lien, in effect, constitutes a new filing. As a result, in the case of a late refiling, any security interest arising after the prior filing of the tax lien, but before the refiling, obtains a priority to the same extent and under the same conditions as if no tax lien had been filed prior to the time of the late refiling.

(Emphasis added). *Id.*

The Internal Revenue Regulations also provide in 26 C.F.R. § 301.6323(g)–1(a)(3) as follows:

> *Effect of failure to refile* If the district director fails to refile a notice of lien in the manner described in paragraphs (b) and (c) of this section, *the notice of lien is not effective, after the expiration of the required refiling period, as against any person without regard to when the interest of the person in the property subject to the lien was acquired.* However, the failure of the district director to refile a notice of lien during the required refiling period will not, following the expiration of the refiling period, affect the effectiveness of the notice with respect to:
>
> (i) Property which is the subject matter of a suit, to which the United States is a party, commenced prior to the expiration of the required refiling period, or
>
> (ii) Property which has been levied upon by the United States prior to the expiration of the refiling period.
>
> However, if a suit or levy referred to in the preceding sentence is dismissed or released and the property is subject to the lien at such time, a notice of lien with respect to the property is not effective after the suit or levy is dismissed or released unless refiled during the re-

quired refiling period. *Failure to refile a notice of lien does not affect the existence of the lien.*

(Emphasis added).

■ The Government now insists that the actual assessment dates are July 12, 1980 and August 30, 1982, the dates when the first notices were sent to the Schutts according to Certificates of Official Record dated March 14, 1986. Exhibits A & B to the United States' brief in support of motion for summary judgment. The Government asserts that the assessment dates listed on the "Notice of Federal Tax Lien" are somehow in error. This Court holds that for purposes of this case, the assessment dates listed in the Notice of Federal Tax Lien and filed in Platte County are controlling. This is consistent with the statutory notice scheme contemplated by Congress with its purpose of providing notice to parties such as senior lienholders.

■ The refiling period for the tax lien of $4,938.25 expired on July 4, 1985. The United States has not refiled its tax lien thereon and litigation regarding the matter was not initiated until November 13, 1985. Therefore, pursuant to the Internal Revenue regulations and statutes, the failure to refile makes the notice of tax lien ineffective as to the WCDA.

The Government's failure to refile its federal tax lien within the required refiling period has nullified the effect of the prior filing causing the federal tax lien to lose its priority. S.Rep. No. 1708, 89th Cong., 2d Sess., Reprinted in 1966 U.S. Code Cong. & Admin.News at 3733. Even if the Government attempted to refile its notice of tax lien today, the intervening rights of WCDA have now taken priority. The Schutts no longer have any interest in the subject property as their redemption period expired in December 1984. The Internal Revenue Service, therefore, cannot now reattach the lien of $4,938.25, after notice thereto has expired, to property which the taxpayers no longer have an interest in. It would be wholly unreasonable to allow the Government to let its notice of tax lien expire, fail to refile for nearly two years, and then attempt to foreclose despite the expired

notice of lien. See 26 U.S.C. § 6323(g)(3)(B).

While the WCDA took the property in question, subject to the federal tax liens, it did so only to the extent that the Internal Revenue Service properly complied with its own rules and regulations. As the Government insists that a lienholder must comply with the notice provisions of 26 U.S.C. § 7425, so too must the Internal Revenue Service comply with its own refiling provisions. To hold otherwise would make the refiling requirement a futile and unnecessary act. Furthermore, the clear language of 26 U.S.C. § 6322 indicates that a lien may become unenforceable through a lapse of time.

The holding of this case does not affect the claim of the Internal Revenue Service to a lien against the Schutts and their property. However, this Court does hold that the failure of the Internal Revenue Service to refile notice of the lien of $4,938.25 within the requisite time period makes it ineffective as to the WCDA. The Government cannot now foreclose its lien of $4,938.25 against the subject property at this late point in time.

■ As to the second lien of $6,102.95, this Court finds that litigation regarding this lien commenced approximately six months prior to the expiration of its refiling date and pursuant to 26 C.F.R. § 301.-6323(g)(1)(i), said lien has not yet become ineffective as to the WCDA. It is noted that those same regulations also provide that upon dismissal of the lawsuit, the lien notice is ineffective, if it was not refiled within the refiling period. However, since the Internal Revenue Service seeks foreclosure of the lien in its counterclaim, such relief is not precluded by this "dismissal" provision, where suit has been filed prior to the expiration of the lien notice. The Government should, however, be required to refile said notice of tax lien forthwith.

## MERGER AND PRIORITY

The plaintiff asserts that WCDA should be allowed to foreclose its lien a second time giving the United States proper notice under 26 U.S.C. § 7425. The plaintiff ar-gues that the lien which WCDA had by virtue of its mortgage did not merge when WCDA acquired title to the property so as to extinguish the lien and raise the Government's lien to first priority. Plaintiff argues that placing the federal tax liens in first priority creates an inequitable result.

It is well established that state law is controlling in determining what property or property rights belonging to a taxpayer can become subject to the federal lien. *Aquilino v. United States,* 363 U.S. 509, 512–513, 80 S.Ct. 1277, 1279–1280, 4 L.Ed.2d 1365 (1959); *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958). However, federal law is controlling, once a lien has attached, in determining the priority of competing liens on the taxpayer's property. *Id.* at 514, 80 S.Ct. at 1280. "[M]atters directly affecting the nature or operation of such liens are federal questions, regardless of whether the federal statutory scheme specifically deals with them or not." *United States v. Brosnan,* 363 U.S. 237, 238, 80 S.Ct. 1108, 1110, 4 L.Ed.2d 1192 (1960).

That such federal law is controlling in determining the priority status of the Internal Revenue Service liens here is supported by the case of *Southern Bank of Lauderdale County v. I.R.S.,* 770 F.2d 1001 (11th Cir.1985). There, the court rejected plaintiffs' attempts to reforeclose its senior mortgages and thereby extinguish the federal tax liens. The court also discounted the mortgagees' arguments that an inequitable result was reached where the tax liens were allowed to " 'leapfrog priorities.' " *Id.* at 1007.

There is some support under Wyoming law for the proposition that the doctrine of merger does not apply where there is no intent to merge the title and lien held by the same person, where intervening claims exist. *Bolln v. LaPrele,* 27 Wyo. 335, 196 P. 748 (1921); *Paul v. Harris,* 40 Wyo. 261, 276 P. 444 (1929). In *Bolln,* Judge Kimball stated:

It is well established law that, where there are two mortgages upon an estate, and the first mortgagee takes a conveyance of the equity of redemption, his

first mortgage will not necessarily be merged, but he may keep it alive against the second mortgage. This rule against merger is invoked when the justice of the case requires it, and to carry out the intention of the parties, which intention may have been either expressed by their actions, or may be presumed from a consideration of their interests. Its object is to protect the purchaser of the equity of redemption from a junior lien which he is not obligated to pay.

*Bolln v. LaPrele,* 196 P. 748 at 749–750.

This principle was also quoted in the *Paul* case by Judge Riner who further observed that:

> 19 R.C.L. p. 489, § 282, states the rule to be:
>
> 'Unless an intention to merge with knowledge of a junior lien or liens clearly appears, no merger results from the acquirement by the holder of the senior mortgage of the interests of the mortgagor, and the senior mortgage retains its priority as against all junior or intervening liens upon the mortgaged property; and this is true whether the interest of the mortgagor is the legal title to the land or the mere equity of redemption. It is only when the fee and the lien center in the same person, without any intervening claims, liens, or equities, that a merger of the title and the lien will take place.'

*Paul v. Harris,* 276 P. 444 at 447. These rules were not ultimately effective in supporting the claims made in each of those cases, however the general rules stated therein would seem to support plaintiff's nonmerger claim.

■ Even so, the question of the priority of the federal tax liens must be determined by application of federal law. Faced with the decision in *Southern Bank of Lauderdale County v. I.R.S.,* 770 F.2d 1001 and a recent decision from this district, *United Savings Bank of Wyoming v. Spellman,* No. C85–0083, slip op. (D.Wyo. Feb. 25, 1985), this Court feels compelled to hold that the WCDA cannot foreclose on its lien a second time to extinguish the federal tax lien and that the Government's tax lien was raised to first priority when WCDA foreclosed on its mortgage but failed to notify the Internal Revenue Service. *Southern Bank of Lauderdale County v. I.R.S.,* 770 F.2d at 1007–1009. Any inequitable result which this procedure creates is outweighed by the strong federal purpose which collection of taxes serves to the national interest. *Id.* at 1009.

The Internal Revenue Service is, therefore, entitled to foreclose only on its lien of $6,102.95 as against the property previously described herein.

NOW, THEREFORE, IT IS ORDERED that plaintiff's motion for summary judgment be, and the same is, hereby granted in part and denied in part as provided herein; it is

FURTHER ORDERED that the motion of defendant and third-party plaintiff, United States Internal Revenue Service, be, and the same is, hereby granted in part and denied in part as provided herein.