**In re George C. COLE and Bessie L. Cole, Debtors.**

**Bankruptcy No. 96–40828–HJB.**

United States Bankruptcy Court, D. Massachusetts.

March 13, 1997.

Joseph H. Reinhardt, Springfield, MA, for Chapter 7 Trustee.

Carl D. Aframe, Worcester, MA, for Debtors.

Bruce D. Levin, Boston, MA, for Charles Calabrese.

Paul R. Salvage, Springfield, MA, for John Burritt.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination is a "Motion to Compel Turnover" (the "Motion") filed by the Chapter 7 Trustee, Joseph B. Collins (the "Trustee"). The Trustee seeks

an order of the Court compelling a Ms. Jacqueline E. Powell ("Ms. Powell"), the daughter of George and Bessie Cole (individually, "Mr." or "Mrs." Cole, or jointly, the "Debtors") and the trustee of C & C Enterprise Realty Trust (the "C & C Trust"), to transfer all the assets of the trust to the Trustee.[1] Mrs. Cole is the sole beneficiary of the C & C Trust.

The Debtors argue that an order compelling Ms. Powell to transfer those assets is not appropriate, because there is no equity in the said assets for the estate. The Trustee appears to contend that the existence of equity in the assets of the C & C Trust is irrelevant, and that the assets should be transferred to the Trustee in any event. Nevertheless, the parties appear to have reached common ground on a single conclusion. They agree that because certain federal tax liens appear early in the chain of encumbrances on the assets of the C & C Trust, the Trustee *might* employ them, pursuant to 11 U.S.C. § 724(b), to pay administrative expenses of the estate. Of course, for the Trustee to have such power, the liens must be valid, on which point the parties disagree. The Debtors claim that the liens have expired by operation of law, while the Trustee contends that a 1990 Congressional act has extended the validity of the liens. The Debtors concede, however, that if the following question of law is answered by the Court in the affirmative, the Motion should be allowed:

> Did the Omnibus Budget Reconciliation Act of 1990, Section 11317 amending § 6502 of the Internal Revenue Code, extend the effectiveness of the Tax Liens on real estate in Massachusetts for an additional four years beyond the date when the Tax Liens would have otherwise expired?

"Stipulation on Motion to Compel Turnover of Beneficial Interest in C & C Enterprise Realty Trust Relating to Harvey Street and 100 Garvey Drive Real Estate," dated December 13, 1996 (the "Stipulation of Facts"), ¶ 5.

For the reasons set forth below, the Court determines that the above question presents two very separate issues, and that their resolution neither precludes nor mandates allowance of the Motion before the Court.

## I. *Facts*

No material facts are in dispute relative to the issue here presented.[2]

In 1987 and 1988, the IRS recorded a number of Notices of Federal Tax Lien ("NOFTLs") in the Commonwealth of Massachusetts Hampden County Registry of Deeds (the "Hampden Registry") against one or both of the Debtors. Only five of these NOFTLs are at issue here: (1) a September 30, 1987 NOFTL for taxes assessed on March 30, 1987 and May 25, 1987, totaling $28,172.03; (2) a November 23, 1987 NOFTL for a tax assessed on September 21, 1987, totaling $3,333.63; (3) an April 21, 1988 NOFTL for a tax assessed on February 8, 1988, totaling 2,288.47; (4) a May 27, 1988 NOFTL for taxes assessed on April 4, 1988 and March 21, 1988, totaling $17,932.92; and (5) an August 18, 1988 NOFTL for a tax assessed on May 30, 1988, totaling $4,298.01.[3] If the NOFTLs are still valid, the federal tax liens represent the first priority liens on the real estate held by the C & C Trust.

At the time that the said tax liens were assessed, 26 U.S.C. § 6502, entitled "collection after assessment," provided as follows:

> **(a) Length of period.**—Where the assessment of any tax imposed by this title has

---

**1.** In the Motion, the Trustee also sought an order compelling Mr. Cole to turnover an amount of money attributable to prepetition lottery winnings. However, the Trustee subsequently indicated to the Court that he did not intend to pursue such an order because he was unable to determine whether the Debtors had any lottery proceeds in their possession as of the Petition Date. Accordingly, the "Motion to Compel Turnover" is deemed withdrawn with respect to the lottery winnings.

**2.** On December 16, 1996, the parties jointly filed the Stipulation of Facts in which they reached agreement as to all facts disputed in the Motion. This Court's findings, therefore, are based on facts agreed to by the parties either in the Motion or the said Stipulation of Facts.

**3.** Only the last NOFTL applied to both Debtors. The first four NOFTLs listed Mr. Cole and "George Cole Trucking" as the affected taxpayers.

been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—

(1) within 6 years after the assessment of the tax, or

(2) prior to the expiration of any period for collection agreed upon in writing by the Secretary [of the Treasury] and the taxpayer before the expiration of such 6–year period. . . .

26 U.S.C. § 6502(a) (1988).

On December 5, 1988, the Debtors formed the C & C Trust, a Massachusetts nominee trust, naming Ms. Powell as the trustee and Mrs. Cole as the sole beneficiary. On December 8, 1988, two parcels of real property were transferred to Mr. Cole [4]: (1) the Debtors' residence, located at 100 Garvey Drive, Springfield, Massachusetts, and (2) a parcel of commercial real estate located at Lot A, Harvey Street, Springfield, Massachusetts. On that same date, Mr. Cole transferred his interest in both properties to Mrs. Cole, who then transferred her interest to Ms. Powell as Trustee of the C & C Trust. With regard to the Garvey Drive property, the deeds transferring the property first to Mr. Cole, then to Mrs. Cole, and then to Ms. Powell were all recorded in the Hampden Registry on December 8, 1988. With regard to the Harvey Street property, only the deed transferring the property to Mr. Cole was recorded in the Hampden Registry on December 8, 1988. The other two deeds, transferring the property from Mr. Cole to Mrs. Cole and

then to Ms. Powell as trustee of the C & C Trust, were recorded in the Hampden Registry on January 5, 1989.[5]

On February 21, 1996, the Debtors filed a petition in this Court under Chapter 7 of the Bankruptcy Code, and the Trustee was subsequently appointed. On June 18, 1996, the Trustee filed the instant Motion, and the Debtors responded with an opposition.[6] After an initial nonevidentiary hearing on the matter, the Motion was scheduled for an evidentiary hearing. However, on December 16, 1996, the parties filed the above-referenced Stipulation of Facts, which they have suggested left no material facts in dispute. Accordingly, the evidentiary hearing was canceled and the Court took the Motion under advisement. On December 30, 1996, the parties submitted memoranda in support of their positions (respectively, "Trustee's Memo." and "Debtors' Memo.").

## II.  *Positions of the Parties*

The federal tax liens were assessed and recorded more than six but less than ten years prior to the commencement of this case. The Trustee argues that the Omnibus Budget Reconciliation Act of 1990, which extended the statute of limitations for IRS tax liens from six years to ten years applies to the liens at issue.[7] He contends that since "each and every one of these liens was less than six years old when P.L. 101–508 was enacted[,] . . . under the plain language of the statute, the effectiveness of each and

---

4. The Stipulation of Facts fails to disclose the source of the transfers to Mr. Cole.

5. The assets of the C & C Trust also include a 1994 Lincoln Town Car, but the Stipulation of Facts does not address that asset.

6. The Debtors also filed a "Motion to Amend Schedules" on June 27, 1996. The Debtors requested that Schedule B be amended to reflect the beneficial interest of the C & C Trust owned by Mrs. Cole, listing the equity as $0, and that Schedule C be amended to reflect a $15,000 exemption taken under 11 U.S.C. § 522(d)(1) on behalf of Mrs. Cole due to her property interest in real estate. On July 3, 1996, the Trustee filed an Objection to the Motion to Amend Schedules. A hearing was held on August 7, 1996. However-

er, the matter was then continued generally pursuant to a joint request of the parties.

7. *See* Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–508, § 11317(a), 104 Stat. 1388 (1990); *see also* 26 U.S.C. § 6502 (current version). The 1990 statute also provided, in relevant part:

(c) EFFECTIVE DATE.—The amendments made by this section shall apply to—

.    .    .    .    .

(2) taxes assessed on or before [November 5, 1990] if the period specified in section 6502 of the Internal Revenue Code of 1986 (determined without regard to the amendments made by subsection (a)) for collection of such taxes has not expired as of such date.

Pub.L. No. 101–508, § 11317(c).

every one of these liens is extended to ten (10) years." Trustée's Memo. at 3.

The Debtors argue that, regardless of the Omnibus Budget Reconciliation Act of 1990, the liens are no longer valid. They note that a new NOFTL was not filed prior to the "Last Day for Refiling" [8] indicated on the NOFTLs. Debtor's Memo. at 4–7. The Debtors point to Massachusetts Conveyancing Association Title Standard Number 54, which reports in a comment: "It is the practice of the [IRS] to place a date in column (e) of the Notice of Federal Tax lien form which operates as a certificate of release if a refiling of the lien is not made by said date." Accordingly, the Debtors argue:

> Title examiners rely upon the Title Standard and the last day for refilling as indicated on the Federal Tax Liens when they are conducting their title review. If this Court were to rule otherwise in this case of first impression, then hundreds, if not thousands, of title certifications throughout Massachusetts, if not throughout the U.S., would be jeopardized by this automatic retroactive extension of the lien.

*Id.* at 7.

III. *Discussion*

Some background on the manner in which federal tax liens attach and are collected is necessary. A federal tax lien is created by operation of statute when a taxpayer refuses or neglects to pay a tax after payment is demanded. 26 U.S.C. § 6321. The lien extends to "all property and rights to property, whether real or personal, belonging to" such person. *Id.* The amount of the lien is the tax owed "including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto." *Id.* The lien "continue[s] until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322. Time lapses when

the period for collection of the lien runs under § 6502(a). Prior to the passage of Public Law No. 101–508, that period ended six years after assessment of the underlying taxes, unless the taxpayer agreed to lengthen the period pursuant to § 6502(a)(2). The amendment extended the collection period to ten years. Pub.L. No. 101–508, § 11317(c).

In order to ensure that the tax lien has priority over subsequent interests or encumbrances, the IRS is required to file a NOFTL. If a NOFTL is not filed, the lien is "not … valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor." 26 U.S.C. § 6323(a); *see also Kitaeff v. Massachusetts Bay Transportation Authority (In re Bay State York Co., Inc.),* 204 B.R. 277, 282 (Bankr.D.Mass.1996).

Thus, a distinction must be drawn between whether an IRS lien exists and whether it can be enforced (is "valid") against a particular creditor or purchaser.[9] It exists as long as the debt has not been satisfied and the period for collection has not run. However, the lien is valid against a purchaser or creditor only where a NOFTL has been filed in accordance with § 6323(f) prior to the purchase of or perfection of the creditor's interest in the property. § 6323(a).

A. **Whether the IRS liens exist**

The 1990 act provided that the new ten year statute of limitations applied to "taxes assessed on or before [November 5, 1990] if the period specified in section 6502 [prior to the amendment] … for collection of such taxes [had] not expired as of such date." Pub.L. No. 101–508, § 11317(c). The language of the statute is plain, so the Court must apply its ordinary meaning. *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Martin v. Bajgar (In re Bajgar),* 104 F.3d 495, 497–98 (1st Cir.1997). Effectively,

---

**8.** The last day for refiling indicated on the five NOFTLs at issue here was the date six years plus thirty days post-assessment of the underlying tax(es). For instance, the first NOFTL concerned taxes assessed on March 30, 1987 and May 25, 1987, and the last days for refiling were

given as April 29, 1993 and June 24, 1993, respectively.

**9.** Section 6323(a) uses the word "valid" to describe the priority of the tax lien against the rights of parties other than the taxpayer.

where an assessment underlying a federal tax lien was made less than six years before November 5, 1990, the new ten-year statute of limitations applies to the lien. *See Behren v. United States,* 82 F.3d 1017, 1018–19 (11th Cir.1996) (where six-year period specified by § 6502(a)(1) would have expired on November 28, 1990, 23 days after enactment of Public Law No. 101–508, "the amendment to § 6502 applies by its terms"); *see also Foutz v. U.S.,* 72 F.3d 802, 803–04 (10th Cir.1995) (where taxpayer executed an agreement to extend collection period to a date after the enactment of Public Law No. 101–508 pursuant to § 6502(a)(2), period was extended to ten years by the amendment); *Kaggen v. Internal Revenue Serv.,* 57 F.3d 163, 163–64, *aff'd on reh'g,* 71 F.3d 1018 (2d Cir.1995) (same).

■ The period for collection of the earliest of the IRS liens extended to March 30, 1993 under the former version of § 6502(a)(1). Since the statute of limitations had not expired as to any of the IRS liens as of November 5, 1990, the amendment of § 6502(a)(1) applied to all of the IRS liens. Accordingly, the federal tax liens all exist.

### B. Whether the IRS liens are valid against the interests of others

■ Because the collection period for a tax lien can be extended beyond the ten-year statute of limitations in certain circumstances,[10] Congress established a system of "refiling" an IRS lien when the collection period is lengthened. *See* 26 U.S.C. § 6323(g). Each NOFTL (including those involved here) set forth a "Last Day for Refiling," which is calculated by adding ten years (previously six years) and thirty days to the date of assessment of the particular

tax involved. *See* 26 U.S.C. § 6323(g)(3). For example, with respect to the NOFTL involving a tax assessed on September 21, 1987, the last day for refiling was reported as October 21, 1993.

■ The Internal Revenue Code establishes a "required refiling period" which is the one-year period ending on the last day for refiling. § 6323(g). If a new NOFTL is filed within this period, the lien will continue to exist and will maintain the priority it had under the original NOFTL. If the refiling deadline passes without action by the IRS, the existing NOFTL operates as a certificate of release.[11] This certificate operates as "conclusive [evidence] that the lien referred to in such certificate is extinguished." 26 U.S.C. § 6325(f)(1)(A).

■ If an NOFTL is not timely refiled but the collection period for the lien has not yet expired, the IRS can issue a "Certificate of Revocation" of the certificate of release. *See* § 6325(f)(2) (where IRS determines that certificate of release "was issued erroneously or improvidently," certificate may be revoked and lien reinstated by filing notice of such revocation); Internal Revenue Manual § 5350, sub-section 535(16)(2) (May 13, 1994) ("[A] Certificate of Revocation should be issued to revoke a self-releasing lien in those instances in which a new lien has been filed late."). However, "[t]he reinstated lien is not valid against any [purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor] until notice of the reinstated lien has been filed in accordance with the provisions of [§ 6323(f)] subsequent to or concurrent with the time the reinstated lien became effective." 26 C.F.R. § 301.6325–1(f)(2)(iii)(b) (1996).

---

**10.** The statute of limitations may be extended by written agreement of the parties. § 6502(a)(2). In addition, the collection period will be suspended in a number of circumstances. § 6503. For example, the limitation period will be suspended while the automatic stay is in effect as a result of the pendency of a bankruptcy case. 26 U.S.C. § 6503(h). If such a suspension occurs, the lien is effectively extended by the length of the suspension period. Thus, whether or not an IRS lien has expired cannot be determined solely by examining whether the ten-year period has terminated.

**11.** The standard form used by the IRS to record NOFTLs provides: "[U]nless notice of lien is refiled by the date [specified], this notice shall, on the day following such date, operate as a certificate of release as defined in [§] 6325(a)." IRS Form 668(Y), Notice of Federal Tax Lien Under Internal Revenue Laws. The IRS is required to provide a certificate of release for tax liens under 26 U.S.C. § 6325(a).

The reinstated lien will be valid against the aforementioned property interests only from the date the new NOFTL is filed; it is not retroactive to the filing date of the first NOFTL. § 6325(f)(2); 26 C.F.R. § 301.6323(g)–1(a)(4) (1996); *United States v. Winchell,* 793 F.Supp. 994, 996 (D.Colo.1992). As a result, if the refiling deadline is missed, any security interests previously junior to the IRS liens would achieve seniority, provided that they were recorded or perfected before a new NOFTL was recorded. *See* S.Rep. No. 89–1708, part II.A.7 ("[I]n the case of a late refiling, any security interest arising after the prior filing of the tax lien, but before the refiling, obtains a priority to the same extent and under the same conditions as if no tax lien had been filed prior to the time of the late refiling.") U.S.Code Cong. & Admin.News 1966 pp. 3722, 3733; *see also Title Guar. Co. v. Internal Revenue Serv.,* 667 F.Supp. 767, 770–71 (D.Wyo.1987) ("The Government's failure to refile its federal tax lien within the required refiling period has nullified the effect of the prior filing causing the federal tax lien to lose its priority."); *United States v. Stonehill,* 702 F.2d 1288, 1300 (9th Cir.1983); Timothy R. Zinnecker, *When Worlds Collide: Resolving Priority Disputes Between the IRS and the Article Nine Secured Creditor,* 63 Tenn. L.Rev. 585, 591–92 (1996) ("Failure to timely refile the notice [of federal tax lien] does not invalidate the lien, but it does adversely affect its priority.").

Here, the collection period was extended due to the amendment of the statute of limitations in 1990. Whether or not a new NOFTL must be timely filed in order to preserve the IRS's priority during that extended period appears to be a question of first impression.

"The sine qua non of § 6323 is notice to subsequent takers of the existence of the IRS lien." *Davis v. United States,* 705 F.Supp. 446, 453 (C.D.Ill.1989). Analogous situations have arisen where the taxpayer is so incorrectly identified in an original NOFTL that the recordation does not provide constructive notice of the tax lien against the taxpayer. In such situations, courts have uniformly held that the NOFTL is insufficient to give the IRS rights superior to subsequent purchasers of or encumbrances in the taxpayer's property. *Hudgins v. Internal Revenue Serv.,* 967 F.2d 973, 976 (4th Cir.1992); *United States v. Sirico,* 247 F.Supp. 421, 422 (S.D.N.Y.1965) ("The test is not absolute perfection in compliance with the statutory requirement for filing the tax lien, but whether there is substantial compliance sufficient to give constructive notice and to alert one of the government's claim."); *Reid v. Internal Revenue Serv. (In re Reid),* 182 B.R. 443, 447 (Bankr.E.D.Va. 1995); *Ducote v. United States (In re de la Vergne),* 156 B.R. 773, 779 (Bankr.E.D.La. 1993).

In the instant situation, there appears to be nothing which would alert a bona fide purchaser or holder of a security interest that the subject tax liens still existed for four years after the release date set forth on the NOFTLs. Anyone conducting a title search of the Debtors' property would not be aware that the tax liens still attached. The extension of the collection period alone would not provide to a third party the constructive notice necessary under the circumstances.

Furthermore, it is not surprising that the Internal Revenue Service has given this matter some consideration. Indeed, the Internal Revenue Manual provides in relevant part:

> In November, 1990 the statute of limitations for collection was extended from six years to ten years. Due to the creation of the "self-releasing" notice of lien, it is necessary to record a "corrective lien" for each unsatisfied and unexpired lien before the [last day for refiling].... It is imperative that corrective liens be recorded timely to prevent the premature release of the original liens. If the original lien is erroneously released, our priority is lost.

Internal Revenue Manual § 5350, sub-section 535(12)(1) (April 29, 1992). Thus, the IRS itself recognized the duty to file new NOFTLs as a result of the 1990 amendment.[12] Accordingly, the Court holds that absent the filing of a new NOFTL prior to

---

12. In their respective memoranda, the parties have sought to introduce additional views of the IRS. In support of their position, the Debtors refer to a November 16, 1990 letter from the an

the release date in the original NOFTL, reflecting an extension in the collection period, an IRS tax lien, albeit in existence, loses its priority against the interests of a purchaser, holder of a security interest, mechanics lienor, or judgment lien creditor, whose claim is perfected prior to the date of the filing of the new NOFTL.

Here, the refiling deadlines stated on the five NOFTLs at issue passed without the filing of new NOFTLS, and in fact, the IRS still has not filed new NOFTLs. The IRS's failure to file new NOFTLs within the required refiling period destroyed their priority as against the existing mortgages, as well presumably as against the rights of the Trustee afforded by 11 U.S.C. 544(a).[13]

## C. Now what?

The Motion before the Court seeks that the Court order the Debtors to turn over to the Trustee various assets including those held in the C & C Trust. The Debtors argue that turnover of the C & C Trust assets is not appropriate, because there is no equity for the estate in those assets. The Trustee totally rejected the Debtors' opposition, but

became enamored of the contention that the equity issue could be avoided because the federal tax liens on the trust assets and § 724(b) [14] together afforded to the estate a benefit which dictated that the Motion be granted. Unfortunately for the Trustee, the Court finds that the Trustee has no meaningful rights under § 724(b). The subject NOFTLs no longer enjoy their priority position and even if the NOFTLs were now refiled, the Trustee would have the ability to avoid the liens altogether, pursuant to 11 U.S.C. § 545(2).[15] *See* 5 COLLIER ON BANKRUPTCY § 545.03[4] at 545–12 (15th ed. rev. 1996) ("If ... notice of the tax lien has not been filed before bankruptcy, or has been imperfectly filed, it would not be valid as against a hypothetical bona fide purchaser as required by section 545(2), and thus would be subject to avoidance by the trustee."). Finally, § 724(b) only affords a benefit to the estate if the subject tax liens are unavoidable.

## IV. *Conclusion*

Through the Stipulation of Facts, the parties framed a question of law, which they

---

IRS representative to a title insurance company. In support of his position and by way of affidavit, the Trustee submits a contrary view of the IRS, achieved through a telephone conversation with yet another IRS representative. Neither communication would be admissible over objection in an evidentiary hearing, the views are conflicting, and in any event, neither is grounded in a document as critical to IRS operations as its manual.

13. 11 U.S.C. § 544(a) provides:
(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against

whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

14. 11 U.S.C. § 724(b) provides in relevant part:
(b) Property in which the estate has an interest and that is subject to a lien that is not avoidable under this title and that secures an allowed claim for a tax, or proceeds of such property, shall be distributed—

.     .     .     .

(2) second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien....

15. 11 U.S.C. § 545(2) provides:
The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists....

supposed would lead to a resolution of the Motion. That effort has failed. The Court's conclusions as set forth above amply demonstrate that the Trustee will not be able to achieve a benefit for the estate by invading any federal tax liens, pursuant to § 724(b).

Nevertheless, still unanswered is whether the C & C Trust assets have any equity for the estate, pursuant to § 541(a), assuming that the federal tax liens are avoided altogether, pursuant to § 545(2). This dispute has returned to its beginning point. Absent settlement, resolution of the Motion will require an evidentiary hearing to determine whether there is equity for the estate in the assets of the C & C Trust. Therefore, the court will schedule a status conference to determine the Trustee's appetite for such a hearing.