SOUTHERN BANK OF LAUDERDALE COUNTY, Plaintiff-Appellee,

v.

INTERNAL REVENUE SERVICE, United States of America, Defendants-Appellants.

MID–STATE HOMES, INC., Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

Nos. 84–7280, 84–7501.

United States Court of Appeals, Eleventh Circuit.

Sept. 13, 1985.

Frank W. Donaldson, U.S. Atty., Caryl P. Privett, Asst. U.S. Atty., Birmingham, Ala., Glenn L. Archer, Jr., Michael L. Paup, Wynette J. Hewett, Steven I. Frahm, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C., for defendants-appellants.

John E. Higginbotham, Florence, Ala., William B. Tatum, Ford, Caldwell, Ford & Payne, Huntsville, Ala., for Southern Bank of Lauderdale County.

James M. Edwards, Copeland, Franco, Screws & Gill, Montgomery, Ala., for Mid-State Homes, Inc.

---

* Honorable Eugene A. Wright, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

1. In *Southern Bank of Lauderdale County v. Internal Revenue Services, United States of America,* 586 F.Supp. 12 (N.D.Ala.1984) [hereinafter cited as *Southern Bank*], the taxpayer, Florence Reinforced Plastics, Inc., an Alabama Corporation, executed two mortgages to Southern Bank on a parcel of real property located in Lauderdale County, Alabama.

In *Mid-State Homes, Inc. v. United States,* No. 83–AR–1072–S, slip op. (N.D.Ala. May 22, 1984) [hereinafter cited as *Mid-State*], the taxpayers, the Fergusons, executed a first mortgage to Jim

Before KRAVITCH and CLARK, Circuit Judges, and WRIGHT *, Senior Circuit Judge.

CLARK, Circuit Judge:

These two cases, which were consolidated for oral argument purposes, present questions about the federal tax lien and the notice provisions of 26 U.S.C. § 7425(b). In both cases the district court granted summary judgment in favor of the appellees Southern Bank of Lauderdale County (Southern Bank) and Mid-State Homes, Inc. (Mid-State). For the reasons discussed below, we reverse.

## I. FACTS

The facts in both cases are undisputed. The appellees, Southern Bank and Mid-State, obtained their respective interests in the property by either the assignment or execution of mortgages upon which the taxpayers were obligated.[1] These mortgages were properly recorded. Thereafter, the Internal Revenue Service (IRS) made assessments against the taxpayers for unpaid taxes and properly filed notices of the federal tax liens pursuant to 26 U.S.C. § 6323.[2]

The taxpayers defaulted on their mortgages. Thereafter, Southern Bank and Mid-State conducted nonjudicial foreclosure sales in accordance with the power of sale contained in the mortgages. Both Southern Bank and Mid-State admit that they did not provide the United States with notice of the sales as set forth under 26 U.S.C. § 7425. Nor did the United States consent to the sales.[3] Southern Bank and Mid-

Walters Homes, Inc. who later assigned the mortgage to Mid-State.

2. In *Southern Bank,* the taxpayer was assessed $19,025.61. In *Mid-State,* the taxpayers were assessed $8,580.18.

3. Under 26 U.S.C. § 7425(c)(1), notice of a nonjudicial or other sale of property "shall be given ... in writing, by registered or certified mail or by personal service, not less than 25 days prior to such sale, to the Secretary." The statute further provides that a nonjudicial or other sale of property "shall discharge or divest such property of the lien or title of the United States if the United States consents to the sale of such prop-

State were the purchasers of the property at the nonjudicial sales.[4]

Recognizing that its initial foreclosure was ineffectual against the United States because of its failure to give notice, Mid-State foreclosed on the property approximately eleven months after the first foreclosure sale.[5] On this second occasion, however, Mid-State gave proper notice of the foreclosure sale to the United States pursuant to 26 U.S.C. § 7425. Mid-State was the purchaser of the property at this second sale and thereafter recorded its foreclosure deed.

## II. PROCEEDINGS IN THE DISTRICT COURT AND ARGUMENTS ON APPEAL

### A. *Southern Bank*

Southern Bank filed its complaint seeking: (1) to quiet title to the property; (2) an injunction prohibiting the IRS from selling the property under its notice of levy; (3) a discharge of the tax lien; and (4) a determination that Southern Bank was the owner of the property with the rights of the IRS or any other interested party to be governed by the redemption provisions of the Code of Alabama.[6] *Record,* No. 84–7280 at 3, 6.

Southern Bank argues that under 26 U.S.C. § 6321 the tax lien only applied to the interest the taxpayer held in the property prior to the foreclosure sale, that state law controlled the legal interest the taxpayer held in the property, and that federal law limited the tax lien to only that property interest. Because Alabama is a "title" state, which means that legal title passes to the mortgagee upon execution of the mortgage, Southern Bank argues that the only

interest retained by the taxpayer prior to foreclosure was its equitable right of redemption. Thus, the tax lien only attached to this equitable right of the taxpayer, which was a right the taxpayer had to gain legal title by paying off the note secured by the mortgage. According to Southern Bank, the government's interest in the property, subsequent to the foreclosure sale, was only a statutory right of redemption.[7] Southern Bank concedes that because notice of the sale was not given to the IRS, the tax lien remained in effect to that extent.

The United States maintains that due to its lack of notice of the sale, its lien was undisturbed by the foreclosure. Because the sale extinguished Southern Bank's mortgage, the United States contends that its junior lien was automatically elevated to a first lien against the real estate acquired by the purchaser at the sale.

The district court concluded that Southern Bank had a better equitable and legal argument. The court observed:

> Thus, the IRS lien could only attach to what the mortgagor had and could not leap ahead of Bank simply because Bank purchased at foreclosure. It would be unfair in the extreme to make a distinction here between foreclosure sales where a third party purchases and where the mortgagee purchases. The court must therefore conclude that, *as to IRS,* the nonjudicial foreclosure sale conducted by Bank on March 30, 1982 is a nullity. Legal title to the property in issue under the law of Alabama was held by Bank prior to the sale and continues to be held by Bank. The effect of this court's ruling is to place the parties in

erty free of such lien or title." 26 U.S.C. § 7425(c)(2).

**4.** Southern Bank purchased the property at the nonjudicial foreclosure sale for $37,714.18. *Southern Bank,* 586 F.Supp. at 13. Mid-State purchased the property at the nonjudicial sale for $12,542.74. *Record,* No. 84–7501 at 109.

**5.** The first sale was held on December 30, 1981. The second sale was held November 30, 1982. *Id.* at 112.

**6.** *See* Ala.Code § 6–5–230 to § 6–5–246 (1977).

**7.** Southern Bank reaches this conclusion because it held legal title before and after the foreclosure sale and the foreclosure eliminated the mortgagor's right of equitable redemption. The mortgagor then only had a statutory right of redemption. *Southern Bank,* 586 F.Supp. at 13. See *infra* at § III C for a discussion of this issue.

the same position vis-a-vis each other as they were in just prior to Bank's nonjudicial foreclosure sale. This means, of course, that the court disagrees with the Bank's contention that IRS only has a statutory right to redeem.

*Southern Bank,* 586 F.Supp. at 14 (emphasis in original).

### B. *Mid-State*

Because the United States levied and seized possession of the subject property, Mid-State filed its complaint alleging that the United States wrongfully levied upon the property. Mid-State argues that 26 U.S.C. § 7425 was unconstitutional as written or applied and that the procedures required under the statute had not been followed. Mid-State sought to enjoin the United States from enforcing its lien and sought to have the subject property returned. *Record,* No. 84–7501 at 32.

In finding in favor of Mid-State the court stated:

> This Court has not changed its mind since it wrote *Southern Bank,* and therefore believes that Mid-State's second foreclosure was successful in cutting off U.S.A.'s tax lien, leaving U.S.A. with no more than a lien creditor's statutory right to redeem.
>
> . . . .
>
> Based on the conclusions which this Court has reached there is no necessity for expressing an opinion on the question of the constitutionality of 26 U.S.C. § 7425 or an opinion on the alleged failure of U.S.A. to comply with 26 U.S.C. § 6331(a). These issues are mooted by the rationale of this Court.

*Record,* No. 84–7501 at 113, 114.

### C. *Arguments on Appeal*

The parties raise similar arguments on appeal. The United States essentially argues that the district court erred when it concluded that "where a nonjudicial foreclosure sale was held without notice to the United States, the sale was a nullity insofar as the Government was concerned and

the foreclosing mortgagee consequently retained a lien against the property that was superior to the federal tax liens." *Appellant's Brief,* No. 84–7501 at 8. It further contends that in *Mid-State* the district court erred when it treated the second sale as effective to extinguish the federal tax lien on the basis of its holding in Southern Bank. The United States takes the position that the court's holdings are contrary to the plain language of the statute, its interpretation by the courts, and its legislative history.

Southern Bank admits in its brief:

> A federal tax lien attaches to the taxpayer's interest in property and becomes enforceable against the property whether his interests are extensive or limited. IRS also correctly asserts that state law controls in determining what interest the taxpayer has in the property, and that federal law determines whether a lien attached to the property and the priority of competing liens. *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Brosnan,* 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960); *United States v. Bess,* 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135 (1958). There is no controversy as to these statements of law.

*Appellee's Brief,* No. 84–7280 at 5.

The appellees argue that 26 U.S.C. § 7425 was only designed to protect the government's interest in property prior to a nonjudicial foreclosure if the I.R.S. was not given notice of the sale and that the protection continued because the I.R.S. lien remained after the sale as a lien junior to that of each appellee's lien. They urge that a failure to give notice should not create a "wind fall" or greater interest in the property than the United States held prior to foreclosure. Mid-State points out that "[t]here is nothing in the language of the statute or the legislative hsitory [sic] to suggest that Congress intended to leapfrog priorities. Instead, the clear directive of the statute is simply that the tax lien continues if notice of foreclosure is not given." *Appellee's Brief,* No. 84–7501 at 5. Both

Mid-State and Southern Bank claim that under Alabama law the taxpayers only held an equitable right of redemption, and that this was the only interest to which the tax lien could attach. Thus, it is argued that to obtain title to the property the IRS must first make payment in full of the prior mortgage indebtedness. The appellees contend that if the government had been given notice before the foreclosure sales, it would have had to purchase the property at foreclosure for the full amount owed to each mortgagee in order to protect the tax lien and obtain any revenue for the government. To change the priorities because of lack of notice, it is urged, would be against the principles of equity and fairness. It is apparent the district court was persuaded by these arguments. We now address the issues raised by this appeal.

## III. DISCUSSION

### A. *Failure of a Mortgagee to Provide Notice of a Nonjudicial Foreclosure Sale Pursuant to 26 U.S.C. § 7425*

When a taxpayer, who is liable to pay any tax, neglects or refuses to pay the tax after demand, the amount becomes "a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321.[8] "The overriding purpose of the tax lien statute obviously is to ensure prompt revenue collection." *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 734–35, 99 S.Ct. 1448, 1462, 59 L.Ed.2d 711 (1979). As we observed in *United States v. Second National Bank of North Miami*, 502 F.2d 535 (5th Cir.1974), *cert. denied*, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975), "[i]t has long been recognized that liens to guarantee payment of taxes are an important element of the sovereign's taxing power." *Id.* at 545. With

these objectives in mind, we must rule on the questions presented in this appeal. We initially determine the consequences that arise when a mortgagee fails to provide notice to the government of a foreclosure sale and subsequently purchases property that is subject to a valid federal tax lien.

Under 26 U.S.C. § 7425(b) "a sale of property on which the United States has or claims a lien ... shall ... be made subject to and without disturbing such lien or title, if notice of such lien was filed or such title recorded in the place provided by law for such filing or recording more than 30 days before such sale and the United States is not given notice of such sale in the manner prescribed in subsection (c)(1)...." *Id.* The statute sets forth two requirements that must exist before a sale of property, upon which the United States has a tax lien, can be made subject to the lien. First, the United States must file its notice of lien 30 days prior to the sale. Second, the United States must not be furnished with notice of the sale in the time and manner prescribed by 26 U.S.C. § 7425(c)(1). One commentator, in discussing these notice provisions, made the following observation:

> The judicial or nonjudicial procedures provided under local law by which the holder of a senior mortgage or other lien may foreclose the interests of the debtor and of junior lienors may not suffice to extinguish a junior *federal* lien, unless the senior lienor complies with the further requirements prescribed by Congress for the protection of the Government.

Plumb, *Federal Liens and Priorities— Agenda for the Next Decade III*, 77 Yale L.J. 1104, 1168 (1968) (emphasis in original).

█ We have determined that the liens attached to the property in question.[9] It is undisputed that the government filed no-

---

**8.** The statute provides:
> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) *shall be a lien in favor of the*

> *United States upon all property and rights to property, whether real or personal, belonging to such person.*

26 U.S.C. § 6321 (emphasis added).

**9.** *See infra* at § III C.

tice of the tax liens at least 30 days prior to the foreclosure sale. It is also undisputed that the mortgagees, Southern Bank and Mid-State, did not provide the government with notice of the sales pursuant to 26 U.S.C. § 7425(c). Since both of the requirements for a sale to be made subject to the tax lien have occurred in these cases, we hold that the sales of the property subject to the tax liens were made *subject to and without disturbing the federal tax liens.*[10]

Our conclusion is supported by *Myers v. United States,* 647 F.2d 591 (5th Cir. Unit A 1981).[11] In *Myers,* the mortgagee held the senior encumbrance on the property. The tax lien, which was duly recorded, was junior to the mortgage. After the tax lien was filed a sheriff's sale was held pursuant to a nonjudicial foreclosure proceeding initiated by the mortgagee and the mortgagee purchased the property. The mortgagee subsequently sold the property to Myers, a third party. At no time during the foreclosure proceedings was the United States joined as a party or served with notice of the sale. The government levied on the property and served Myers with a notice of the seizure. Myers brought an action for wrongful levy.

In deciding that the tax lien was not discharged by the nonjudicial foreclosure sale because of the mortgagee's failure to give notice, we observed that 26 U.S.C. § 7425 "was intended to protect the United States, where its tax lien is junior, from its discharge under state law without prior notice to the United States of proceedings by which the property is sold." *Id.* at 596. We concluded that:

> Section 7425(b) provides that where notice of a federal tax lien is duly filed more than thirty days prior to the date of the foreclosure sale, the sale will be made subject to the federal lien unless written notice of the sale is served upon the United States at least twenty-five days before the sale is held. It is undisputed that such notice was not given in the present case. It therefore follows that the second federal lien was not discharged by the foreclosure sale.

*Id.* at 601.

In *Little v. United States,* 704 F.2d 1100 (9th Cir.1983), the Ninth Circuit reached a similar conclusion. The court observed that "[s]ection 7425(b) expressly provides that a nonjudicial sale of property on which the United States has a lien ... shall be made 'subject to and without disturbing such lien or *title*' if the United States is not given notice of such sale in the manner prescribed in subsection (c)(1)." *Id.* at 1107 (emphasis in original) (footnote omitted).[12] And, in *United States v. Rodgers,* 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), the Court noted that "[o]nce a lien has attached to an interest in property, the lien cannot be extinguished (assuming proper

---

**10.** Mid-State agrees that the property is "subject to" the federal tax lien. However, it argues that it has *legal title* to the property "subject to" the government's statutory right of redemption. As we shall demonstrate in the following sections of this opinion, this argument is without merit.

**11.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

**12.** Another case that is consistent with our position is *Baldwin County Savings & Loan Association v. United States,* 81–2 Tax Ct.Rep. (CCH) ¶ 9619 (S.D.Ala.1981). In *Baldwin,* the taxpayer executed a mortgage in favor of the plaintiff/mortgagee. The mortgage was duly recorded. The United States subsequently filed a notice of federal tax liens against the taxpayer.

The mortgagee, without providing notice pursuant to 26 U.S.C. § 7425, conducted a nonjudicial foreclosure sale. The mortgagee purchased the property at the sale.

The district court found that the tax liens attached to the real property in issue. It concluded that because the United States was not given notice of the sale, the federal tax liens were not discharged. Thus, the court held that "by purchasing the property for an amount equal to the unpaid balance of the promissory note, not only was the mortgage extinguished, but also the debt was paid. Accordingly, the tax liens on the subject real property were promoted to a senior lien status, and that is the position they enjoy today." *Id.* at 88,065.

Neither appellee attempts to distinguish *Myers,* by which we are bound, nor *Little,* by which we are not bound, but which we find persuasive.

filing and the like) *simply by transfer or conveyance of the interest." Id.* at 2141 n. 16.

### B. Elevation of the Federal Tax Lien From its Junior Status

Southern Bank and Mid-State argue that to allow the government to summarily levy on the property would allow it to "leapfrog priorities." Their contention is that this would cause an inequitable result for it would put the government in a better position than prior to the foreclosures.

These arguments relate to the priority and overall operation of the federal tax lien law. It is established that matters directly affecting the nature and operation of the federal tax lien and its relative priority present federal questions. *See United States v. Brosnan,* 363 U.S. 237, 240, 80 S.Ct. 1108, 1110, 4 L.Ed.2d 1192 (1960) ("[M]atters directly affecting the nature or operation [of federal tax liens] are federal questions, regardless of whether the federal statutory scheme specifically deals with them or not."); *Aquilino v. United States,* 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960) ("[O]nce the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property.' ").

With this principle in mind, we address the appellees' arguments. The federal tax lien has been elevated to its current status because of the principles regarding merger and foreclosure sales and due to the operation of 26 U.S.C. § 7425. When a mortgagee forecloses on property, the doctrine of merger generally operates to extinguish

the mortgage indebtedness and the lien held by the mortgagee. "In other words, the mortgage is no longer in existence, and thus the original holder of the mortgage no longer has a mortgage lien which can be foreclosed a second time, even if the original indebtedness is not satisfied from the sales proceeds." *Baldwin County Savings & Loan Assoc. v. United States,* 81–2 USTC ¶ 9619 at 88,065 (S.D.Ala.1981). "The equity of redemption in either case, however, is extinguished by a valid foreclosure sale...." *Trauner v. Lowrey,* 369 So.2d 531, 534 (Ala.Sup.Ct.1979).

Because Southern Bank and Mid-State conducted the foreclosure sales and purchased the subject property it is reasonable for us to conclude that a complete merger of title resulted, vesting the fee simple title to the property in the mortgagees. This title is superior to all liens except those not extinguished, such as state, county and city taxes, a federal tax lien properly perfected as in this case, and such other liens as federal and local governments may determine are not extinguishable by a nonjudicial foreclosure sale.[13] For this reason, it was impossible for Mid-State to conduct a second correcting foreclosure sale. It follows that when Southern Bank's and Mid-State's liens were extinguished, the tax liens, were naturally elevated from their junior status.

In our view, the appellees' failure to provide notice to the government of the sale and their subsequent purchase of the property has placed the government in a position to exercise any of its collection remedies including levy and seizure of the property. The appellees argue that this result is harsh and that it violates principles of equity.

---

**13.** To this statement about extinguishment of junior liens in a nonjudicial foreclosure, we must attach a caveat. This holding is limited to this case and these facts. Because of our decision in this case, it is not necessary for us to discuss the constitutional implications inherent in Alabama's nonjudicial mortgage foreclosure statute which on its face permits extinguishment by a mortgagee of subordinate liens without any notice to those lienors except by publication in the newspaper. At this point in time, to the

knowledge of this court, no court has held such a foreclosure statute unconstitutional. However, for a discussion of such a constitutional problem, *see Federal Deposit Insurance Corporation v. Morrison,* 747 F.2d 610 (11th Cir.1985), *reh'g denied,* 763 F.2d 419 (1985) (Clark, J., dissenting with opinion); Note, *Mortgages— Does Foreclosure Under Power of Sale Violate Due Process Rights?,* 4 Cum.-Sam.L.Rev. 507 (1974); G. Osborne, G. Nelson and D. Whitman, Real Estate Finance Law § 7.23 at 497 (1979).

Before we rule on their equitable arguments, we examine the legislative history of 26 U.S.C. § 7425. It illustrates that the statute was designed to make a "provision for a timely notice to the Government where it has the status of a junior lienor and there is no plenary proceeding." Federal Tax Lien Act of 1966, S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Ad.News 3722, 3748. The Committee on Finance indicated that "[t]here [did] not appear to be any reason why in these cases there should not be a timely notice of the proceedings to the Government where notice of its tax lien is on file. The requirement of notice gives the Government an opportunity to review its position and determine the appropriate action *without placing an undue burden on the foreclosing creditor.*" *Id.* (emphasis added). In specifically discussing 26 U.S.C. § 7425(b) it was observed:

> The bill provides that, in the case of all other foreclosure proceedings, where timely notice of the proceedings is given to the Government, the Government's claim to property under a tax lien is to be discharged in the manner provided by local law.
>
> Where foreclosures covered by this provision are made without proper notice to the Government, the bill provides that this does not affect the Government's claim under a tax lien (as where the Government is not joined in a judicial foreclosure). In these cases, the Government's claim continues against the property into the hands of a third party.

*Id.* at 3749.

One legal commentator, in seeking reform of the notice provisions, made the following observations:

> Notice of a sale enables the tax collector to drum up interest among potential bidders, to observe the fairness of the sale, and to reach the surplus proceeds, if any. Notice well in advance of the sale seems necessary only for the first of those purposes; but the tax collector is likely to utilize the opportunity to drum up bids only in the case of real property . . . and in these cases 25 days may be too short to be meaningful.

> . . . .

> *[I]t seems desirable also to provide that the Government's remedy for inadequacy of the notice shall be only against the selling creditor, and that the innocent purchaser's title shall not be impaired if he behaved reasonably.*

Plumb, *Federal Liens and Priorities— Agenda for the Next Decade III,* 77 Yale L.J. 1104, 1171–72 (1968) (emphasis added) (footnotes omitted).

Even if this commentator's suggestions for reform were adopted, Mid-State and Southern Bank would not prevail. The commentator advocates that the remedy for inadequate notice should be against the selling creditor rather than an *innocent purchaser who behaved reasonably. E.g.,* as in *Myers, supra.* Mid-State and Southern Bank were neither innocent purchasers nor did they behave reasonably under the circumstances.

Although appellees contend that our interpretation of the statute produces a harsh result, we think it is consistent with the plain language of the statute, the legislative history, and the overall purpose of our tax collection system. The appellees claim in each case the value of the property was much less than the amount of the debt, that I.R.S. in neither case would have paid off the debt if notice had been properly given, and that the government is unjustly enriched if it now has a first lien against the property. To accept appellees' argument would result in a disparate, unequal and impossible application of the federal notice statute. Appellees would have the notice statute apply only when the value of the land exceeded the mortgagor's debt to the mortgagee. This would require litigation by the government of every non-notice case so that it would be able to conduct a comparison of the value of the security to the amount of the indebtedness. Congress required the simple expediency of notice by the mortgagee to the government prior to foreclosure in every case. We cannot and

do not wish to rewrite the statute. Equitable principles do not persuade us to reach a contrary conclusion for the harsh results now imposed could have easily been avoided by Mid-State and Southern Bank.

Mid-State and Southern Bank, as mortgagees, were in the best position to provide notice to the government and extinguish the liens. If as in *Myers*, an innocent third party purchaser takes the property subject to the lien, these experienced mortgagees certainly should not receive different treatment.

Our conclusion is bolstered by the supremacy clause of the United States Constitution which provides that:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Art. VI, cl. 2.

As the Supreme Court stated in *Commonwealth Edison Company v. Montana*, 453 U.S. 609, 634, 101 S.Ct. 2946, 2962, 69 L.Ed.2d 884 (1981) " '[p]re-emption of state law by federal statute or regulation is not favored' in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." *Id.*

The collection of taxes serves a vital national interest. The federal tax lien is one of the tools utilized by the government to achieve this objective. Because of this important interest, we cannot permit states to nullify the effectiveness of the federal tax lien by enacting nonjudicial foreclosure laws or by applying various equitable principles recognized by the state. The legislative history of 26 U.S.C. § 7425 makes clear that Congress did not intend such a result.

We therefore hold that the failure of the mortgagees to comply with the notice provisions of 26 U.S.C. § 7425 before they conducted the foreclosure sales and purchased the property, caused their mortgage liens to be extinguished and the federal liens to be elevated from their junior status.

### C. *Property Interest to which the Tax Lien Attached*

■ One issue we must decide is whether each taxpayer had a sufficient property interest for the federal tax liens to attach to the underlying property.

The appellees argue that Alabama classifies itself as a "title" state with regard to mortgages. Thus, "[e]xecution of a mortgage passes legal title to the mortgagee. The mortgagor is left with an equity of redemption, but upon payment of the debt, legal title revests in the mortgagor." *Trauner v. Lowrey*, 369 So.2d 531, 534 (Ala.1979) (citations omitted). The equity of redemption is extinguished by a valid foreclosure sale. Thus, a "mortgagor or his vendee is left only with the statutory right of redemption." *Id.*

Because Alabama follows the title theory, the appellees contend that the only interest to which the liens could attach was each taxpayer's equity of redemption. When foreclosure occurred, each taxpayer was left with a statutory right of redemption. Thus, the appellees contend that the United States holds only a statutory right of redemption in the property.

According to the appellees, the United States, as a holder of a statutory right of redemption, could not claim legal title to the property prior to the foreclosure sale unless it paid the mortgage in full and cannot now seek to recover the property until it has paid the mortgage in full.

We agree with the appellees that under Alabama law the property interest held by each taxpayer was an equitable right of redemption. In Alabama, this is a valuable property interest for it may be conveyed by the mortgagor and it allows a mortgagor, who has retained possession of the subject property, to be possessed of legal title

against all of the world except the mortgagee or its assignee. *See Trauner v. Lowrey,* 369 So.2d 531, 534 (Ala.1979); *Jones v. Butler,* 237 So.2d 460, 462 (Ala. 1970). We therefore conclude that each taxpayer had "property" and "rights to property" under 26 U.S.C. § 6321 to which the tax lien could attach. See *Little v. United States,* 704 F.2d 1100, 1105 (9th Cir.1983) for a discussion of a right of redemption being a "right to property" since such a right is an economic asset, has a pecuniary worth, and is transferable.

In its brief, Mid-State relies upon *Gilliland v. United States,* 47 A.F.T.R.2d 1364, 81–1 USTC ¶ 9322 at 86,837 (M.D.Tenn. 1981), arguing the following:

> In a dispute involving similar facts, the courts in *Gilliland* noted that since the taxpayer held only equitable rights to the property, the IRS' lien could attach solely to these rights. The court also noted that a foreclosure sale without notice to the IRS did not discharge the IRS' lien, which continued on after the sale.

*Appellee's Brief,* No. 84–7501, at 8. The court in that opinion held the following:

> However, it is clear that the lien did in fact attach to Webb's interests in the realty, even though those interests were equitable in nature. See *Howard v. United States,* 566 S.W.2d 521 (Tenn. 1978) (federal tax lien attached to the equitable interest of income beneficiary in a spendthrift trust). And, since Webb's equitable interests in the property continued to exist until terminated by the foreclosure sale, the issue now before the court is whether that sale was also effective to extinguish the government's rights under the tax lien.
>
>         *     *     *     *     *     *
>
> The foreclosure sale was precisely the kind of non-judicial sale contemplated by 26 U.S.C. § 7425(b), and in the absence of the notice required by the statute, the sale could not operate to discharge the government's tax lien. That tax lien, having previously attached to Webb's equitable interests in the subject property,

clearly survived the trustee's foreclosure sale.

*Gilliland,* ¶ 9322 at 86,840.

The contention by the appellees that the government had only a statutory right of redemption inferior to their title is meritless. The interest of the government after the foreclosure sale was that of an enforceable lien against the realty in each instance and Alabama's statutory redemption provisions have no application to this case.

## IV. CONCLUSION

The judgment of the district court in each case is reversed. In reversing, we do not divest the district court of any jurisdiction it needs with respect to the enforcement of the government's tax liens.

REVERSED and REMANDED.