Ferrara, John S., J.
FINDINGS OF FACT
The defendant, Deutsche Bank National Trust Company (hereinafter, “Deutsche Bank”), was the holder of a first mortgage on real property known as 9 Captain Samuel Forbush Road, Westborough, Massachusetts. The mortgagors were David and Maura Jean Paquette. The Paquettes defaulted on the mortgage loan and Deutsche Bank foreclosed on the property. Deutsche Bank published its first Notice of Mortgagee’s Sale of Real Estate on February 10, 2006, and the sale went forward on March 6, 2006. (Exs. 6, 8, 9, 10.)
There were two liens on the property that are of relevance to this action. One was a federal tax lien, and the other was a writ of attachment by one Dennis Armstrong (hereinafter, “Armstrong”). In the instant case, notices of sale of the subject property that were published did not specifically reference the liens of the I.R.S. or Armstrong, but did note that the sale was subject to, “liens or claims in the nature of liens, . . . any and all unpaid taxes, . . . tax liens, ... or liens or existing encumbrances of record which are in force or applicable . . . whether or not reference to such . . . liens or encumbrances is made in the deed.” (Ex. 8.) This general language is taken directly from G.L.c. 244, §14.
The plaintiff, Commerce Bank and Trust Company (“Commerce Bank”), was the holder of a mortgage from the Paquettes securing a home equity loan, which was subordinate to the Deutsche Bank mortgage. (Exs. 2, 3, 4, 6, 42.) The Paquettes were also in default on that loan, and owed the approximate sum of $170,000.00. *193 (Ex. 4.) Commerce Bank had commenced its own foreclosure proceedings against the Paquettes via notice to them given on January 6, 2006. (Ex. 4.) Commerce had conducted an appraisal of the property and had determined its fair market value to be $770,000.00. (Ex. 7, p. 6.)
When Commerce Bank received notice of the foreclosure sale by Deutsche Bank, it ceased its own foreclosure efforts. Commerce Bank, through its representative, Paul Lisnewski, attended the March 6, 2006 foreclosure sale with the intention of placing a bid to protect Commerce Bank’s interests, if necessary.
Paul Pehoviak (“Pehoviak”) registered as a bidder at the sale, made a required $10,000 bid deposit, and indicated that he was intending to make a “cash” bid. He was the high bidder at the sale, with a bid of $670,000.00. Commerce had been prepared to bid as high as $650,000.00, to protect its interests. When the bid exceeded that amount, Commerce did not make a bid and did not register a “contingent bid” before, during, or after the sale. Lisnewski believed that the bid amount would result in Commerce Bank recovering substantially all it was owed by the Paquettes.
Pehoviak executed a Memorandum of Terms and Conditions of Sale (“Memorandum of Sale”) which included, inter alia, the following terms: (1) a requirement of a $10,000 deposit; (2) the balance of the purchase price was to be paid to Deutsche Bank’s counsel, Ablitt & Charlton, P.C.; (3) if the mortgagee failed to convey title to the buyer for any reason, the mortgagee’s sole responsibility would be return of the deposit paid; and (4) the premises were to be conveyed by a Foreclosure Deed, subject to any unpaid taxes, tax titles, tax liens, and municipal assessments. (Exs. 10, 36.) The Memorandum of Sale contained the following provision: “If the Buyer, including the mortgagee, shall refuse to execute the Memorandum of Sale or shall fail to so perform thereunder, the mortgagee reserves the right to offer the premises to the second highest bidder, or nominee, for the second highest bid pursuant to this Memorandum of Sale. In the event that said second highest bidder shall refuse to execute the Memorandum of Sale or shall fail to so perform thereunder, then the mortgagee shall have the option to purchase the premises for the amount of the second highest bid.” (Ex. 10.) Other provisions in the Memorandum pertinent to this action include a financing contingency, specification of deadlines for payment of the balance due, and a “non-assignment” provision. (Ex. 10.)[1]
The Notices of Sale did not include “the time or times for payment of the balance or the whole as the case may be," as suggested, if not required by G.L.c. 244, §14. (Ex. 8, 9.) The default provision for payment of the balance due in the Memorandum required payment within fifteen (15) days from the date of sale by a certified or bank check. However, if a buyer was going to finance the purchase, he or she had thirty (30) days to make payment. In the latter instance, the Memorandum required that the buyer immediately elect a designated mortgage broker from an approved Mortgage Broker List, identify the mortgage broker, and apply for a purchase mortgage within two days from the date of sale. The buyer or the buyer’s mortgage broker was required to notify Ablitt & Charlton, P.C., of the identity of each lender to whom the buyer made application for a loan within seven (7) days of the sale. If the buyer applied for a mortgage loan and received a written denial, he had five (5) days from the date of the denial to make payment of the balance. A failure by a buyer to comply with any of those terms constituted a default under the Memorandum of Sale. (Ex. 10.)
In executing the Memorandum of Sale, Pehoviak indicated that he would not be financing the transaction by writing the word “cash” in the space that required identification of a mortgage broker. On a Buyer Information Sheet executed at the same time, Pehoviak listed himself as a “nominee” for Paul Stanley, LLC, a limited liability company of which he was either sole or part owner. On that sheet he again noted it was a cash purchase. (Ex. 11.) In fact, Pehoviak was purchasing the properly with the expectation of immediately assigning his bid to another, Thomas Belekewicz (“Belekewicz”), who he may have believed at the time he executed the Memorandum had funds to consummate the purchase.
On March 9, 2006, three days after the foreclosure sale, Commerce Bank, through its counsel, Howard D’Amico, wrote to Attorney William Amann, of Ablitt and Charlton, P.C. (hereinafter, “Ablitt and Charlton”), and notified that firm that Commerce was owed an outstanding balance of principal and interest on the home equity loan of one hundred seventy-two thousand, seven hundred ninety-nine dollars and twenty cents ($172,799.20), and requested “an itemization of the Deutsche Bank payoff, and a check for all surplus proceeds to this firm, on behalf of Commerce Bank, immediately upon conveyance of the foreclosure deed.” (Ex. 13.)
On March 16, 2006, Michelle Foy from the office of Attorney Arthur Brecher sent notice of the assignment of the Pehoviak bid to Belekewicz to Deutsche Bank’s closing counsel, Ablitt and Charlton, via telephone facsimile (“fax”). Ms. Foy noted that “the deed and affidavit must reflect assignment of the bid” and requested “documentation in regards to the Waiver with the IRS,” with respect to the subject property. (Ex. 16.) Attorney Brecher appeared to be acting on behalf of both Pehoviak and Belekewicz at that time.
It appears that there was also a telephone conversation between Ms. Foy and Attorney Deidre Cavanaugh, Esq., of Ablitt and Charlton wherein Attorney Cavanaugh informed Ms. Foy that an assignment of the bid was prohibited under the Memorandum of Sale *194 without Deutsche Bank’s approval, and that Deutsche Bank would not approve the assignment. (Ex. 18.) Later that day Ms. Cavanaugh responded to Ms. Foy by fax message, stating, “As per our telephone conversation of today, you are repudiating your intent to perform under the terms set forth in Memorandum of Sale dated March 6, 2006, on the above-captioned property. Please confirm your intent as to this property within 24 hours, or the property will be offered to the next highest bidder.” (Ex. 17.)
It may be that Ms. Cavanaugh assumed at the time of her communication with Ms. Foy that, because the assignment had been rejected, Pehoviak would not go forward with the purchase. If Ms. Cavanaugh was under that impression, it was dispelled by a letter from Attorney Arthur Brecher within the 24-hour period, on March 17, 2006, wherein he wrote to her, ‘Thank you for your fax of March 16, 2006. Unfortunately, we have not repudiated our client’s right to purchase, nor do we intend to do so. We agree that your Memorandum of sale provides that the bid may not be assigned without the assent of your client. Therefore, the deed should run to Paul Pehoviak, he will then deed it to the ultimate purchaser . . .” (Ex. 18.)
Mr. Brecher then again raised the issue of the federal tax lien and the Internal Revenue Service’s right of redemption. He wrote that Deutsche Bank had not notified potential purchasers of the federal tax liens and that “without a waiver of the right to redeem, you have not properly represented the title on which the bid was made. We are prepared to take title as represented. Therefore, please advise how you will clear up the IRS lien as your foreclosure is faulty.” (Ex. 18.)
Attorney Brecher testified at the trial of this matter. He had been representing Mr. Belekewicz and had run a title examination on the 9 Captain Samuel Forbush Road, Westborough property, and discovered the I.R.S. tax lien and an attachment on behalf of Dennis Armstrong. (Ex. 34.) He had concerns regarding whether or not a notice of the foreclosure sale had been sent to the I.R.S. and Armstrong. He had contacted Ablitt and Charlton, P.C., to try to clear up the issue of those notices, but he never intended to repudiate the sale on behalf of Pehoviak or his client, Belekewicz.
Ms. Cavanaugh testified at the trial of this matter to having no memory as to any of the underlying details of this transaction or any of the events relating to this foreclosure sale. The Court does not credit her claim of a lack of memory of any details of this transaction for the following reasons: (1) she only worked at Abblitt for five months, from January 2006 to June 2006; (2) this particular foreclosure matter was transferred from her to the senior partner of the firm, Steven Ablitt, Esq., within days of the afore-described communications; (3) Ms. Cavanaugh would have had to discuss her communications with Attorney Brecher’s firm with Attorney Ablitt; and (4) the matter resulted in a lawsuit against her client, Deutsche Bank, filed by Paul Pehoviak on April 10, 2006, within weeks of her dealings in the matter and while she was still employed at Ablitt and Charlton, P.C. However, given Ms. Cavanaugh’s testimony, there is no further evidence to discern the basis for her conclusion on March 16, 2006 that the bidder, Pehoviak, was repudiating his obligation to perform under the Memorandum of Sale.
Thereafter, Pehoviak retained Attorney L. Richard LeClair to represent him in closing on the foreclosure sale. Attorney Brecher sent a facsimile memorandum or letter to Attorney Leclair stating that he represented “the bank that Paul Pehoviak has asked to finance the acquisition of the foreclosure property,” and that, “based on our tile examination, there is an IRS lien that has 120 days to redeem the property under IRS §7425. There was no proper 20-day notice given to the IRS just a green card with other. The foreclosing attorneys want Paul to take title anyway. We cannot finance his acquisition with an IRS lien. I attach a copy of the lien, a copy of the fax received from the attorneys as well as my response. Let me know if I can be of assistance.” (Ex. 20.) Later that same date, Attorney Brecher faxed notes regarding his title examination of the subject property to Attorney LeClair. (Ex. 34.) It is not clear if Attorney Brecher was actually representing Belekewicz, or a lender that Belekewicz was going to utilize to purchase the property, or both.
On March 21, 2006, Attorney LeClair wrote to Attorney Cavanaugh. He advised Ms. Cavanaugh that he represented Pehoviak, that he had learned through Attorney Brecher that there was a federal tax lien recorded following the Paquette mortgage, and that Deutsche Bank had not sent out notice of the sale to the I.R.S. as required by statute. He expressed concern that the failure to give the I.R.S. notice constituted a cloud on any title that Deutsche Bank could convey. The letter went on to state that Pehoviak wanted to go forward with the purchase of the property, and asked how Deutsche Bank proposed to address the I.R.S. lien. Attorney LeClair’s letter advised that Pehoviak objected to a sale of the property to the next highest bidder. (Ex. 21.)
The fax transmittal, apparently sent by “Lucy" at Attorney LeClair’s office, engendered the following email response from Attorney Abblitt:
Lucy, I strongly advise your boss to review the documents on his own and make his own decisions with regard to MGL 244 et seq. Arthur Brecher is making you a party-in-interest to a malpractice claim. I will state this one last time, the IRS was served. It is evident that your firm, may be relying upon attorneys [sic] Brecher’s statements and claims, has no idea what statutes are at play here.
It is clear that your client has previously repudiated his offer to purchase. Attorney Brecher made that clear. Your letter seems to attempt to rescind the *195 repudiation, however, I am not sure that is the case either. What I am sure of is the following. 1. All interested lienholders were served. 2. MGL 244 §18 was complied with. 3. Two title insurance companies agree with us. 4. Your client has relied upon bad advice and has defaulted his 10K deposit. Pursuant to the terms of the contract, we consider you client in material default.
We will address this in a formal letter.
(Ex. 22.)
This response from Attorney Ablitt reflected an unwarranted conclusion that Pehoviak had repudiated his agreement to purchase the property. Further, the assertion that he was notifying LeClair of the service of notice upon the I.R.S. “one last time” suggests that such a representation had been made previously. However, the record suggests that it was the first time that Ablitt and Charlton had advised Attorney LeClair that such notice had been given. Attorney Ablitt’s assertion that Pehoviak was in “material default” on the sale agreement and that his deposit was forfeited was based upon his interpretation of the language of the agreement and the unwarranted conclusions about the exchange between his office and Attorney Brechen He apparently did not consider the effect that non-disclosure of the liens had on Pehoviak’s performance obligations under G.L.c. 244, §14.
It appears that there were some further communications between Attorney LeClair and Ablitt and Charlton over the next several days. On March 30, 2006, Attorney LeClair wrote to Attorney Ablitt. His letter made clear that Pehoviak was the buyer, he still wanted to go forward with the purchase, he was getting the money from a source (presumably Belekewicz) and that he needed “copies of the notice to the Internal Revenue Service and the waiver of notice from the lien creditor.” At that point, it was only twenty-four (24) days after the foreclosure sale. He asked that Attorney Ablitt call him as soon as possible to resolve the matter. (Ex. 23.)
On April 5, 2006, Commerce Bank, through Attorney Howard D’Amico, again wrote to Attorney William Amann at Ablitt and Charlton, P.C., and inquired as to the status of the closing on the foreclosure sale. The letter referenced previous calls made to the firm regarding the same subject. It was the thirtieth day from the date of the sale and Commerce was interested in receiving its share of the sale proceeds. (Ex. 24.)
At that time, Pehoviak was by far the highest bidder on the properly and therefore it would appear to have been in the interests of Deutsche Bank, Commerce Bank and the Pacquettes, for Deutsche Bank to try to close the deal, and it appears that it was in their power to do so. However, Deutsche Bank chose to default Pehoviak for reasons unknown by their counsel. (Testimony of Steven Ablitt, Esq.)
Deutsche Bank was the next highest bidder on the property with a bid of what it was owed. (Testimony of Ablitt; Ex. 7.) The bid amount is reflected in the foreclosure deed as five hundred twenty-eight thousand, two hundred fifteen dollars and eighty cents ($528,215.80). (Ex. 40.) If the Pehoviak purchase and sale did not go through, Deutsche Bank would then own the property for substantially less than its seven hundred seventy thousand dollar ($770,000) appraised value, with a cost basis that presumably included all costs of the foreclosure sale.[2]
On April 10,2006, Attorney LeClair filed the instant action on behalf of the Plaintiff, Pehoviak, against Deutsche Bank and the Paquettes seeking damages and specific performance. (Complaint.) Attorney LeClair also filed a motion for approval of a memorandum of Lis Pendens on the property, which was allowed, and notice of the allowance of the Lis Pendens was given to Deutsche Bank. (Motion, endorsement, and docket entries in this case.)
On April 25, 2006, Attorney D’Amico wrote to Ablitt and Charlton for a third time requesting status of the closing, apparently unaware that there was a problem with the closing and that Pehoviak had filed suit against Deutsche Bank. The letter states, “although your office left me a message several weeks ago indicating that the closing would occur shortly, our review of the records at the Registry of Deeds today indicates that no foreclosure deed has yet been recorded. Please contact us, in writing, immediately to provide us an update as to the status of the action.”
Thereafter, Commerce learned of the suit and on May 26, 2006, intervened as a plaintiff. (Docket Entries, Motion to Intervene, Intervenor’s Complaint.)
On June 3, 2009, Deutsche Bank, as Trustee of Ameriquest Mortgage Securities, Inc., Asset Backed Pass-Through Certificates, Series 2003-AR2 under the Pooling and Service Agreement dated as of May 1, 2003, without recourse, deeded the property to itself, as Trustee of Ameriquest Mortgage Securities, Inc., Asset Backed Pass-Through Certificates, Series 2003-AR2 under the Pooling and Service Agreement dated as of May 1, 2003, without recourse. (Ex. 40.)
James Rogal, Esq., of Ablitt and Charlton, gave testimony via a deposition and the transcript of his deposition testimony was admitted as an exhibit by agreement of the parties. (Ex. 39.) Attorney Rogal testified that Ablitt and Charlton had actually sent timely notice to the I.R.S. of the foreclosure sale, and had obtained a waiver of notice from Dennis Armstrong, and the firm had copies of those documents and evidence of service at the time of their communications with Attorneys Brecher and LeClair in March 2006. (Ex. 39, p. 56-57, 58.) Exhibit 37 in this trial is a facsimile communication from a tax examiner of the I.R.S., dated March 15, 2006, which confirms that the I.R.S. had been notified of the foreclosure sale, at least as of that date. Exhibit 38 is a “Waiver of Statutory *196 Notice” signed by an Attorney Johnson on behalf of Dennis Armstrong, dated March 6, 2006. The Court finds that on the evidence presented, Deutsche Bank, through its counsel, had given notice of the foreclosure sale to the I.R.S. and had obtained a waiver of written notice of the sale from Dennis Armstrong as of the date of the sale.[3]
Attorney Rogal further testified that Ablitt and Charlton refused or declined to provide documentation of the notice and waiver of notice to Attorneys Brecher or Leclair, because “the firm felt that Mr. Pehoviak wasn’t serious about purchasing the property.” (Ex. 39, p. 46, lines 2-7; p. 47, line 7-13; p. 56, lines 2-4; p. 89-90.) Even after suit was filed by Pehoviak seeking specific performance of the purchase and sale agreement, Deutsche Bank did not produce evidence of the notice of sale given to the I.R.S. and Armstrong and attempt to resolve the issues.
RULINGS OF LAW
Massachusetts General Laws, c. 244, §14, requires that a mortgagee exercising the power of sale under a mortgage give notice to all persons who have interests of record at least fourteen (14) days prior to a non-judicial foreclosure sale.[4] It provides that, “. . . no sale under such power shall be effectual to foreclose a mortgage, unless ... a copy of said notice of sale has been sent by registered mail to all persons of record as of thirty days prior to the date of sale holding an interest in the property junior to the mortgage being foreclosed, said notice to be mailed at least fourteen days prior to the date of sale to each such person at the address of such person set forth in any document evidencing the interest or to the last address of such person known to the mortgagee. Any person of record as of thirty days prior to the date of sale holding an interest in the property junior to the mortgage being foreclosed may waive at any time, whether prior or subsequent to the date of sale, the right to receive notice by mail to such person under this section and such waiver shall be deemed to constitute compliance with such notice requirement for all purposes . . .” Id. The statutory form of notice contained in G.L.c. 244, §14, provides, “. . . no purchaser at the sale shall be bound to complete the purchase if there are encumbrances, other than those named in the mortgage and included in the notice of sale, which are not stated at the sale and included in the auctioneer’s contract with the purchaser.”[5] This provision protects junior lien-holders, who may wish to make a bid if it is to their advantage, mortgagors, whose debts might be satisfied by the higher bid of a junior lienholder, and the buyer.
The non-judicial foreclosure procedures provided under Massachusetts law by which a mortgagee may foreclose the interests of the debtor and junior lien-holders will not suffice to extinguish a junior federal tax lien, unless the mortgagee complies with the further requirements prescribed by Congress for the protection of the Government’s interests. 26 U.S.C. §7425; Southern Bank Of Lauderdale County v. I.R.S., 770 F.2d 1001 (11th Cir. 1985). The Internal Revenue Code, Title 26 U.S.C. §7425(b)(c), prescribes the applicable rules relating to the discharge or divestment of tax liens in non-judicial foreclosures. A non-judicial sale of property on which the United States has filed or recorded a lien at least thirty (30) days prior to the sale is made subject to and without disturbing the tax lien, if the I.R.S. is not given timely notice of the sale, in writing, by certified or registered mail, or by personal service. 26 U.S.C. §7425(b); Treas.Reg. §301.7425-2(a); Tompkins v. United States, 946 F.2d 817, 820 (11th Cir. 1991). Notice must be given at least twenty-five (25) days in advance of the sale. 26 U.S.C. §7425(c)(1). Proper notice to the I.R.S. has the effect of discharging or divesting the lien upon foreclosure, leaving the United States with a right of redemption that must be exercised within one hundred twenty (120) days of the sale. 26 U.S.C. §7425(b), (d). The failure of a mortgagee to comply with the notice provisions of 26 U.S.C. §7425 before it conducts a foreclosure sale causes its mortgage lien to be extinguished and the federal lien to be elevated from its “junior” status. The government is then potentially in a position to exercise any of its collection remedies including levy and seizure of the property. Southern Bank of Lauderdale County, supra, at 1007-09.
As noted above, a foreclosing mortgagee must disclose to prospective buyers the existence of known liens either in the notices of sale, or at the time of the auction with inclusion of notice of the liens in the auctioneer’s contract with the purchaser. Otherwise, if the liens are later discovered by a bidder, the bidder cannot be compelled to go forward with the sale and his decision not to do so is not a default. G.L.c. 244, §14.
In the instant case, notices of sale of the subject property that were published did not specifically reference the liens of the I.R.S. or Armstrong. Though the notices did note that the sale was subject to, “liens or claims in the nature of liens, . . . any and all unpaid taxes, .. . tax liens, or liens or existing encumbrances of record which are in force or applicable . . . whether or not reference to such . . . liens or encumbrances is made in the deed,” that language did not suffice to put prospective buyers on notice of the existing liens, but only that the mortgagee would not be liable for paying off junior liens or encumbrances. Pehoviak, upon discovering the existence of the I.R.S. and Armstrong liens, had the right not to go forward with the sale, or to proceed.
A foreclosing mortgagee must act in good faith and use reasonable diligence in exercising the statutory power of sale. West Rosbury Co-Operative Bank v. Bowser, 324 Mass. 489, 492 (1949); Pehoviak v. Deutsche Bank, supra. The duty of good faith and reasonable diligence protects mortgagors and those *197 holding junior encumbrances, and it runs to both types of parties. Seppala & Aho Construction Co. v. Peterson, 373 Mass. 316, 321 (1977); Pehoviak, supra. The six-hundred-seventy-thousand-dollar ($670,000) bid by Pehoviak was an amount that would have substantially paid off the Paquette’s obligations to both Deutsche Bank and Commerce Bank. The second highest bid, that of Deutsche Bank, would result in no payment to Commerce Bank. While Commerce does not stand in the shoes of the Paquettes, and cannot and does not assert any claims that the Paquettes might have against Deutsche Bank, the impact of Deutsche Bank’s actions on the mortgagors and the lienholder may be considered in assessing the reasonableness of the defendant’s actions in the conduct of the foreclosure sale.
In addition, “Every contract implies good faith and fair dealing between the parties to it.’’ Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471, 583 N.E.2d 806 (1991), quoting Warner Ins. Co. v. Commissioner of Ins., 406 Mass. 354, 362 n.9, 548 N.E.2d. 188 (1990). The covenant, of good faith and fair dealing requires that “neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract.” Anthony’s Pier Four, Inc. v. HBC Assocs., supra at 471-72, 583 N.E.2d 806, quoting Druker v. Roland Wm. Jutras Assocs., 370 Mass. 383, 385, 348 N.E.2d 763 (1976). However, the “scope of the covenant is only as broad as the contract that governs the particular relationship.” Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 385, 822 N.E.2d 667, cert. denied, sub nom. Globe Newspaper Co. v. Ayash, 546 U.S. 927, 126 S.Ct. 397, 163 L.Ed.2d 275 (2005). It cannot “create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance.” Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385, 805 N.E.2d 957 (2004). While Commerce does not stand in the shoes of Pehoviak and cannot pursue his contract claims, evidence of bad faith or unfair dealing by Deutsche Bank that interfered with closing the sale bears on the reasonableness of the defendant’s actions.
When counsel for Deutsche Bank received notice from Attorney Brecher that Pehoviak was assigning his winning bid to Belekewicz, it had the right under the provisions of the Memorandum of Sale to reject that assignment and it did so, apparently without any inquiry as to the financial condition or reputation of the assignee. Whether or not that action was reasonable is not of great consequence, because Attorney Brecher responded the next day by indicating that Pehoviak would go forward with purchase without such assignment.
Attorney Brecher’s inquiry as to the status of notice given to the I.R.S. was not only reasonable, but necessary to protect the interests of Pehoviak, Belekewicz, or subsequent takers. Given the apparent absence of specific notice to the I.R.S. and Armstrong, it was incumbent upon Deutsche Bank to respond to the inquiries of Attorney Brecher and Attorney LeClair so as to facilitate the sale. Deutsche Bank could not reasonably have expected that a buyer, discovering the existence of those liens, would not inquire as to whether the requisite notices had been sent to the lienholders.
Deutsche Bank was obligated to give timely and proper notice to the I.R.S. and to Dennis Armstrong of the pending foreclosure sale under G.L.c. 244, §14, if the foreclosure was to be effective. Further, Deutsche Bank had to either specifically disclose those liens to a prospective buyer, or, failing to do so, excuse the buyer from performance if the buyer chose not to go forward. Pehoviak’s demands for evidence of notice given to the lienholders was a proper inquiiy. It did not constitute a repudiation of the deal. Deutsche Bank’s response that it did was unwarranted and unreasonable.
Deutsche Bank’s position that Pehoviak defaulted by not paying the purchase price within fifteen (15) days of the foreclosure sale was also unreasonable. Pehoviak, upon discovering the liens, would have been entitled to withdraw his bid and he would not have been in default. Further, even if Pehoviak had cash on hand, he could not have been expected to pay the purchase price without evidence of notice to the I.R.S. and Armstrong. Deutsche Bank was required to give due consideration to the importance of the sale to the Paquettes and Commerce Bank. It would have been reasonable for Deutsche Bank to provide the documentation and extend the time for performance in order to effectuate the deal. Instead, it declared Pehoviak to be in default and wrongfully advised him that his deposit was forfeited. Deutsche Bank’s actions were in violation of G.L.c. 244, §14, and were unfair and unreasonable.
Prior to trial, Deutsche Bank moved in limine to exclude evidence of events that occurred after March 21, 2006, fifteen days from the date of the foreclosure sale, as irrelevant. Deutsche Bank objected to such evidence when offered during the trial, and requested a standing objection, which the court granted. The court finds that such evidence was relevant to the issue of the reasonableness of Deutsche Bank’s conduct of the foreclosure sale.
From March 21, 2006, until the filing of the Complaint in this action, Deutsche Bank had the opportunity to try to work with Pehoviak to close on the sale. They had the documentation that he requested of them, but refused to provide it. Deutsche Bank’s claimed belief that Pehoviak did not intend to go forward is not persuasive. If Deutsche Bank had such *198 a belief, they were required to communicate their concerns to his counsel and ascertain his financial ability to proceed with the sale. Nothing would have been lost by such an effort, other than Deutsche Bank’s ability to buy the property itself.
Further, it may be inferred from the testimony of Pehoviak that he had used Belekewicz to successfully finance a number of prior transactions, the correspondence from Attorney LeClair to Ablitt and Charlton informing them that his client was prepared to proceed with the purchase, and the Complaint filed on April 10, 2006, in which specific performance was sought, that it is more likely than not that Pehoviak had available to him the means to go forward. Even as of the date of the filing of the suit by Pehoviak, a mere thirty-five (35) days after the foreclosure sale, the matter might have been resolved and the sale closed if Deutsche Bank had provided the documentation that Pehoviak’s counsel had requested. Deutsche Bank refused to do so.
The Court finds that Deutsche Bank did not act in good faith and did not use reasonable diligence in exercising the statutory power of sale, and that Commerce Bank was harmed by Deutsche Bank’s breach of its duty.
CONCLUSION
For the foregoing reasons, judgment shall enter for the plaintiff on Count I of its Complaint in the sum of one hundred forty-one thousand seven hundred eighty-four dollars and twenty cents ($141,784.20).
APPENDIX A
STATUTORY FORM — G.L.c. 244, §14
(Form)
MORTGAGEE’S SALE OF REAL ESTATE
By virtue and in execution of the Power of Sale contained in a certain mortgage given by...... to...... dated...... and recorded with...... Deeds, Book....... page....... of which mortgage the undersigned is the present holder.......
(If by assignment, or in any fiduciary capacity, give reference.)
for breach of the conditions of said mortgage and for the purpose of foreclosing the same will be sold at Public Auction at.....o’clock ....M. on the day of..... A.D. (insert year),...... (place)......all and singular the premises described in said mortgage,
(In case of partial releases, state exceptions.)
To wit: “(Description as in the mortgage, including all references to title, restrictions, encumbrances, etc., as made in the mortgage.)”
Terms of sale: (State here the amount, if any, to be paid in cash by the purchaser at the time and place of the sale, and the time or times for payment of the balance or the whole as the case may be.)
Other terms to be announced at the sale.
(Signed)..................
Present holder of said mortgage.
A notice of sale in the above form, published in accordance with the power in the mortgage and with this chapter, together with such other or further notice, if any, as is required by the mortgage, shall be a sufficient notice of the sale; and the premises shall be deemed to have been sold, and the deed thereunder shall convey the premises, subject to and with the benefit of all restrictions, easements, improvements, outstanding tax titles, municipal or other public taxes, assessments, liens or claims in the nature of liens, and existing encumbrances of record created prior to the mortgage, whether or not reference to such restrictions, easements, improvements, liens or encumbrances is made in the deed; but no purchaser at the sale shall be bound to complete the purchase if there are encumbrances, other than those named in the mortgage and included in the notice of sale, which are not stated at the sale and included in the auctioneer’s contract with the purchaser.
CREDIT(S)
Amended by St. 1975, c.342; St. 1977, c. 629; St. 1980, c. 318, §2; St. 1981, c. 242; St. 1981, c. 795, §11; St. 1991, c. 157, §4, 5; St. 1992, c. 285; St. 1992, c. 287; St. 1998, c. 463, §181.
Current through Chapter 86 of the 2012 2nd Annual Session(C) 2012 Thomson Reuters. No Claim to Orig. U.S. Gov. Works.

 At trial, plaintiffs counsel devoted considerable effort to establish that there were actually two Memoranda of Sale signed by Pehoviak, one which contained his initials at various places (Ex. 10), and another that did not. (Ex. 36.) The Memoranda are otherwise identical. Pehoviak acknowledged that the initials were his. The duplicate without Pehoviak’s initials was given to Pehoviak. The Court does not find that the execution of the two Memoranda suggests any purposeful deception by Deutsche Bank or an effort to conceal the terms from the Buyer.

 It is not clear what costs are included in that amount.

 The Appeals Court in reviewing and reversing the allowance of a motion for summary judgment in this action also found that, on the evidence presented, notice had been given to the I.R.S. and Armstrong pursuant to G.L.c. 244, §14. Pehoviak & another v. Deutsche Bank National Trust Company & others, Appeals Court No. 10-P-461 (2011).

 The Court takes judicial notice of relevant federal law and regulations, and Massachusetts General Laws, that bear on the notice that is required to be given to the I.R.S. to accomplish a discharge of lien, and the notice to lienholders of record to make the foreclosure by power of sale valid. See Massachusetts Guide to Evidence, Section 202, “Judicial Notice of law.”

 See Appendix A; statutory form of Notice of Foreclosure Sale.